[No. 45118. En Banc. June 15, 1978.]

AGNES M. YEATS, *Respondent,* v. THE ESTATE OF WILLIAM JAMES W. YEATS, ET AL, *Appellants,* TRI–STATE MEMORIAL HOSPITAL, *Respondent.*

*Clinton J. Henderson,* for appellants.

*Lloyd L. Pike* and *C. Orno Shoemaker,* for respondent Yeats.

*Charles T. Sharp,* for respondent Tri–State Memorial Hospital.

BRACHTENBACH, J.—The question presented is whether a property settlement agreement, preliminary to a marriage dissolution, disposed of certain insurance policies and other property. Underlying that issue is a policy question as to the specificity required in dealing with such matters in a settlement agreement or a decree of dissolution.

A summary of the facts is necessary. William and Agnes Yeats, married in 1950, filed for dissolution of their marriage in January 1974. Contemporaneously they signed a property settlement agreement. Five months later Mr. Yeats married Jeanie Yeats. He died 6 months later. The plaintiff is the first wife; the defendants are the widow, the estate of Mr. Yeats and his employer, which was joined for reasons discussed later. The parties will be referred to as the first wife, the husband, the widow and the employer.

The first wife contends that insurance policies on the husband's life were not disposed of in the settlement agreement and that she is entitled to a community share of the proceeds on an apportionment theory. She contends that the employer was not entitled to recoup premiums paid on a policy on the husband's life. The court ruled that the settlement agreement did not dispose of the insurance policies and granted summary judgment in favor of the first wife, except as to the former employer. We affirm except for a minor modification of the judgment.

█ Community property not disposed of in a dissolution is owned thereafter by the former spouses as tenants in common. *Chase v. Chase,* 74 Wn.2d 253, 444 P.2d 145 (1968); *Northwestern Life Ins. Co. v. Perrigo,* 47 Wn.2d 291, 287 P.2d 334 (1955). The record reflects that all the policies in issue were community owned.

█ We first must determine whether there was a genuine issue of a material fact as to whether the property in question was disposed of by the settlement agreement. If so, summary judgment was not appropriate. The function

of the court was to determine the intent of the parties and the meaning of the agreement. Absent disputed facts, the construction or legal effect of a contract is determined by the court as a matter of law. On this record, the question was one of law and properly determined by the court in a summary judgment proceeding. *Epperly v. Seattle,* 65 Wn.2d 777, 399 P.2d 591 (1965).

The next question is whether the court was correct in its interpretation of the agreement, *i.e.,* that the agreement did not dispose of the policies. The pertinent provisions of the agreement, entitled "Separation and Support Agreement" are:

*Section 2—Division of Property*
    With respect to property both real and personal acquired by Husband and Wife during their marriage and owned by them or either of them at the time of their separation, the same has heretofore been equitably divided and apportioned between the parties as set forth in Exhibit "A" attached hereto and they hereby ratify and confirm such division.

. . .

*Section 6—Support and Maintenance of Wife*

. . .

    Wife accepts the payments specified in and to be made under this Section . . . in lieu of any interest in and to any and all property which Husband now owns or may hereafter acquire . . .

. . .

II. INSURANCE:

. . .

    The Husband shall maintain in effect for the benefit of the Wife life insurance on the life of the Husband in the amount of $10,000.00 naming the Wife as sole beneficiary thereof.

At the time of the execution of the agreement there were nine life insurance policies on the life of the husband in the face amount of $28,000 with a cash surrender value of approximately $1,000. There were three policies on the life of the first wife with a face amount of $7,550 and a cash surrender value of $1,775. In addition, there was a $75,000

policy on the husband's life owned and paid for by the employer which will be discussed later.

None of the policies is mentioned, much less fully described in the settlement agreement. The boilerplate language quoted above was not adequate to dispose of the policies. While one might assume that the parties intended that each receive the policies on his or her life, one cannot learn that from the terms of the agreement. It is pure speculation to determine what the parties intended or what the agreement meant. We hold that there must be sufficient specificity in settlement agreements or decrees of dissolution to identify the assets and their disposition. The requisite specificity is not present here inasmuch as the policies were not even mentioned.

The dissolution of marriage act mandates disposition of the property of the parties. RCW 26.09.050 provides:

> In entering a decree of dissolution of marriage . . . the court shall consider, approve . . . the disposition of property and liabilities of the parties.

RCW 26.09.070 encourages written separation contracts by making them binding upon the court. However, subdivision three of that statute leaves final authority in the court if it finds the agreement unfair at the time of its execution. If the court is making the division, RCW 26.09.080 specifically provides that the court shall make a just and equitable division of property, considering the nature and extent of community and separate property.

It is impossible for the court to perform its statutorily mandated duties if it is unaware of the nature and extent of the property. Even a general description of the insurance policies would make known that such assets existed. This is necessary before the court or the parties can consider them in evaluating the dispositive scheme.

In this case the only mention of life insurance in the settlement agreement is that the husband was to maintain a $10,000 policy for the benefit of the wife. There was no way for the judge, in approving the agreement, to know of the

existence of 13 policies with a total face value, on both lives, of $110,550.

In summary, we hold that a settlement agreement or decree of dissolution must adequately identify the assets so as to permit the court to approve the agreement or make proper division. At minimum, the documents must put the parties and the court upon notice that the assets exist. This agreement fails in that respect.

■ Having concluded that the insurance policies were not disposed of, it follows that the first wife and husband became tenants in common as to those community owned policies. What were their respective interests at the time of this partition action? Because of the husband's death prior to the partition action, the policies on his life had ripened into face amount proceeds. The policies on the life of the first wife had only a cash surrender value. The nature of the assets at the time of partition is controlling. *See, e.g., Leinweber v. Leinweber,* 63 Wn.2d 54, 385 P.2d 556 (1963).

Consequently, the proceeds figure was the correct measuring value with regard to the policies on the life of the deceased husband. However, the policies on the first wife's life were to be divided, based only on their cash surrender value.

Regarding the policies on the life of the husband, the trial court correctly awarded the first wife one–half of the proceeds, the controlling figure at the time of the partition action. This was the amount properly due her as a tenant in common.

However, the trial court erroneously awarded the husband's estate the total cash surrender value of the policies on the life of the first wife. Because the husband and the first wife also owned the community policies as tenants in common, the first wife was entitled to one–half of the cash surrender value. Consequently, the wife's award of one–half of the proceeds of the policies on the life of the husband should have been reduced by only one–half of the cash surrender value of the policies on her life.

We now turn to the $75,000 policy on the life of the husband which was paid for and owned by the husband's employer which was the beneficiary. The policy was issued 7 1/2 years prior to the husband's death. He was then the administrator of Tri–State Memorial Hospital, his employer. He participated in all meetings of the trustees of the hospital and prepared the minutes of their meetings. Those minutes reveal a plan to have the hospital employer pay the premiums and be the beneficiary and owner of the policy until Mr. Yeats reached retirement age. The policy had a dual purpose: to reimburse the hospital for the expense of replacement of its administrator in the event of his death and to encourage the husband to stay as administrator. The informal, but binding agreement was that if Mr. Yeats died before retirement age, the hospital would be reimbursed for premiums paid and the balance would be payable to the husband's widow or beneficiaries.

The trial court held that the hospital employer was entitled to deduct the premiums paid and that the first wife and the husband's estate were to divide the net proceeds. The trial court was correct. The payment of premiums by the hospital was in lieu of salary increases for several years. The first wife contends that this was a gift to the employer without her consent in violation of RCW 26.16.030(2) which provides that: "Neither spouse shall give community property without the express or implied consent of the other."

The first wife's position is foreclosed by her deposition testimony. She was aware of the policy and the agreement concerning it from its inception. She was told about it by her husband the day it was agreed upon and understood that the hospital would retain the premiums paid and that she would receive only the net proceeds. She stated that because of the policy they decided on several occasions to stay with the hospital rather than move to other offered jobs. Even if this arrangement were a gift of community property, which we do not decide, there was at least an implied consent to it within the meaning of the statute.

The widow appellant makes several alternative arguments. First, she suggests that if the policies were not disposed of in the dissolution proceedings we should adopt and apply the so–called risk payment theory rather than the apportionment of premiums doctrine utilized by the trial court. She cites only a law review article in support of her position.

This doctrine presumably recognizes the unique character of term insurance, *i.e.*, that it exists only by virtue of each advance premium payment. Protection for the coming year depends exclusively upon payment of this advance premium. The length of time the insured has had the policy and the number of premiums paid are irrelevant. As applied to term insurance, the risk payment doctrine states that life insurance proceeds are characterized as separate or community according to the source of the *last* premium payment.

Under the risk payment theory, the husband's estate would be entitled to all the proceeds from the policies on his life assuming the last premium payment was made by him.

We express no opinion on the subject. The theory was not presented to the trial court. There is no proof in the record as to the character of the policies involved. There is no showing as to the nature of the last premium payment. There is some suggestion that the theory is also applicable to whole life policies. However, on such a sketchy record, we decline to decide its applicability to either term or whole life policies. The question is reserved. *See Easterling v. Succession of Lamkin*, 211 La. 1089, 31 So. 2d 220 (1947); *Sherman v. Roe*, 153 Tex. 1, 262 S.W.2d 393 (1953); *Gaethje v. Gaethje*, 7 Ariz. App. 544, 441 P.2d 579 (1968); *Lock v. Lock*, 8 Ariz. App. 138, 444 P.2d 163 (1968); *Travelers Ins. Co. v. Johnson*, 97 Idaho 336, 544 P.2d 294 (1975); *Phillips v. Wellborn*, 552 P.2d 471 (N.M. 1976); Comment, *Community and Separate Property Interests in Life Insurance Proceeds: The Risk Payment Doctrine in State Courts*, 51 Wash. L. Rev. 67 (1976); and Comment,

*Community and Separate Property Interests in Life Insurance: A Fresh Look,* 51 Wash. L. Rev. 351 (1976).

The second alternative argument by the widow is that the potential social security benefits of the first wife were not disposed of by the agreement and should now be taken into account. No authority is cited for the proposition that future social security benefits, based upon unspecified earnings of either spouse, must be considered upon dissolution. We decline to enter this thicket upon this record. We do not consider assignments which are unsupported by argument or authority. *State v. Wood,* 89 Wn.2d 97, 569 P.2d 1148 (1977). Here the position is supported by argument which we do not find persuasive especially in view of the lack of any authority.

Finally, it is argued that a disability payment to the first wife from an insurance policy was not disposed of in the settlement agreement and should be divided in the same manner as the aforementioned life insurance policies. However, a review of the agreement reveals that the disability payment was specifically included. The exact monthly amount of the disability payment is mentioned in the agreement and the husband's liability for support was conditioned upon continuance of that amount. That is sufficient specificity to constitute consideration and disposition of that asset.

Except for modification as to the amount of the award of the cash surrender value of the first wife's life insurance policies, the judgment is affirmed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.