IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re KATHLEEN M. GRANT, | ) | |
| | ) | No. 34321-9-III |
| Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOHN D. GRANT, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

FEARING, C.J. — This appeal pits the importance of finality in litigation against the requisite for a full accounting of assets in a marital dissolution. Based on Washington statutes and the Supreme Court's wisdom in *Yeats v. Estate of Yeats*, 90 Wn.2d 201, 580 P.2d 617 (1978), we side with an inclusive accounting. In this partition action, we reverse the trial court's ruling that a dissolution decree's grant to the husband of the "balance of the assets" effectively disposed of the husband's interest in a retirement account when the list of assets presented to the earlier dissolution court omitted the account.

FACTS

This appeal arises from an action to partition the former husband's interest in a retirement plan never mentioned in a 2010 divorce decree. The subject couple, Kathleen and John Grant, married on November 18, 1978, and separated on June 23, 2009. During the marriage, John Grant worked for the Washington State Department of Revenue for twenty years. John is a certified public accountant. During the marriage, Kathleen Grant cleaned houses and later operated a pizza parlor. The pizza business lost money.

Since Kathleen Grant seeks to partition her former husband's interest in his Washington State Public Employees Retirement System (PERS) pension plan, the parties filed accusatory declarations that detail their respective views as to whether Kathleen knew of John's participation in the plan at the time of the dissolution. John Grant insists that the couple often discussed the existence of the retirement plan. Kathleen's father labored for the State of Washington and retired with a state pension. Kathleen received the parties' mail, which occasionally included PERS statements and newsletters. The parties discussed John switching from one PERS plan to another plan. According to John, Kathleen saw pay stubs that showed a contribution to the PERS plan. Kathleen told the couple's children that John should keep his retirement plan. During the divorce action, John provided Kathleen all records needed for her to ascertain the parties' assets. John questions how Kathleen came to learn about his retirement plan, if she lacked

2

knowledge of the plan before the divorce. He observes that Kathleen sought a portion of his retirement account only after his payments to her ended.

In her declaration, Kathleen Grant declares that the couple rarely discussed finances. John handled the couple's investments. She did not open mail addressed to her husband. Kathleen did not handle John's pay stubs since the State paid John by direct deposit. According to Kathleen, John never mentioned a retirement account through his employment. When Kathleen referenced "his retirement" to the children and to the dissolution court, she spoke of 401(k)s, individual retirement accounts, and an investment account or two, not an unknown retirement plan.

Without the assistance of an attorney, the couple, in February 2010, petitioned for marital dissolution. The petition, prepared by Kathleen, read:

> We have made a marital settlement agreement dividing our property and our bills. We are satisfied with this agreement. The attached agreement was signed freely and voluntarily by each of us, and we intend to be bounded [sic] by it.

Clerk's Papers (CP) at 36. Our copy of the petition lacks any attachment. Kathleen Grant and John Grant may agree on only one proposition—the parties intended to divide their assets evenly.

On May 10, 2010, Kathleen Grant appeared before the Kittitas County Superior Court for entry of a decree of dissolution. The trial court, unconvinced of the soundness of the proposed decree, rejected the proposed decree. The following colloquy, in part,

3

occurred between Kathleen and the dissolution court:

> The Court: Okay. I don't understand what the loan calculator's in here for.
> [KATHLEEN GRANT]: Well, as opposed to taking out his retirement and all that and get fines, penalties, he's going to pay me quarterly. Or, if you wanted to break it down to monthly, it would be 2,000 a month. And that way he can still, you know, keep his—
>
> . . . .
>
> The Court: He is a [Certified Public Accountant]?
> [KATHLEEN GRANT]: Uh-huh. As I said, the reason he set it up like that was as opposed to take everything out of *his retirement*—

CP at 27 (emphasis added).

On May 24, 2010, Kathleen and John Grant appeared before the Kittitas County Superior Court for entry of the same dissolution decree. The trial court then entered findings of fact, conclusions of law, and a decree of dissolution. Two sections of the decree respectively divided the property among husband and wife as:

> 3.2 Property to be Awarded the Husband
> The husband is awarded as his separate property the property set forth in Exhibit copy attached A [sic]. This exhibit is attached or filed and incorporated by reference as part of this decree.
> The husband is awarded as his separate property the property set forth in the separation contract or prenuptial agreement executed by the parties on (date) Feb. 1, 2010. The separation contract or prenuptial agreement is incorporated by reference as part of this Decree. The prenuptial agreement or, pursuant to RCW 26.09.070(5), the separation contract is filed with the court.
> The husband is awarded as his separate property the following property (list real estate, furniture, vehicles, pensions, insurance, bank accounts, etc.): See attachement.
> 3.3 Property to be Awarded to the Wife
> The wife is awarded as her separate property the property set forth in Exhibit copy attached B [sic]. This exhibit is attached or filed and

4

incorporated by reference as part of this decree.

     The wife is awarded as her separate property the property set forth in the separation contract or prenuptial agreement referenced above.

     The wife is awarded as her separate property the following property (list real estate, furniture, vehicles, pensions, insurance, bank accounts, etc.): See attachment.

CP at 77-78 (boldface omitted). The decree lacked any attachment. The parties,

nonetheless, attached two signed pages to the findings of fact and conclusions of law.

The first page read:

Marital Settlement Agreement
AGREEMENT TO DISTRIBUTION OF ASSETS

WE (JOHN D. AND KATHLEEN M. GRANT) AGREE THAT
KATHLEEN RECEIVES $178,000 AND OWNERSHIP AND ALL
RIGHTS TO GRANT'S PIZZA PLACE. JOHN RECEIVES THE
BALANCE OF THE ASSETS AND OWNERSHIP OF THE HOUSE.
NOTE: THIS AGREEMENT DOES NOT INCLUDE PERSONAL
PROPERTY WHICH WILL BE DIVIDED BASED ON OTHER
METHODS AS AGREED.

METHOD OF DISTRIBUTION TO KATHY.

| | |
|---|---|
| $$$ DUE TO KATHY | $178,000 |
| WELLS FARGO - CHECKING (12/21/09) | (20,000) |
| WELLS FARGO - CD (MAT 3/15/10) | (31,000) |
| LOAN RECEIVABLE - KT | (20,000) |
| NOTE RECEIVABLE - PAYABLE ON DEMAND | (107,000) |
| BALANCE | 0 |

CP at 73. The parties did not define or identify the personal property to be divided on

other methods. Page two repeated page one, but, on page two, someone wrote "paid"

5

next to the two Wells Fargo entries and "due" next to the loan and note receivable entries. CP at 74.

John Grant testifies that the parties attached a third page to the findings of fact, although our copy of the findings of fact omits any such attached page. The third page, according to John, explained how the parties reached the division of assets. The page read:

## ASSET DISTRIBUTION

|                              | $$$$$   | KATHY   | JOHN    |
|------------------------------|---------|---------|---------|
| PERSHING - JOINT ACCT        | 120,000 | 60,000  | 60,000  |
| WELLS FARGO - CHECKING       | 32,000  | 16,000  | 16,000  |
| WELLS FARGO - CD             | 31,000  | 15,500  | 15,500  |
| WELLS FARGO SAVINGS          | 25,000  | 12,500  | 12,500  |
| LOAN RECEIVABLE - KT         | 20,000  | 10,000  | 10,000  |
| PERSHING - IRA               | 40,000  | 20,000  | 20,000  |
| WA STATE DEFERRED COMP       | 88,000  | 44,000  | 44,000  |
| GPP [Grant's Pizza Place]    | 100     | 100     | 0       |
| HOUSE                        | 100     | 0       | 100     |
| TOTAL ASSETS                 | 356,200 | 178,100 | 178,100 |

| | |
|---|---|
| $$$ DUE TO KATHY | 178,000 |
| WELLS FARGO - CHECKING (12/21/09) | (20,000) Paid |
| WELLS FARGO - CD (MAT 3/15/10) | (31,000) Paid $31,600 |
| LOAN RECEIVABLE - KT | (20,000) Starting 6/1/2010 |
| NOTE PAYABLE ON DEMAND | (107,000) Starting 6/1/2010 |
| BALANCE | 0 |

WE AGREE THAT KATHLEEN RECEIVES $178,000 AND OWNERSHIP AND ALL RIGHTS TO GRANTS PIZZA PLACE. JOHN RECEIVES THE BALANCE OF THE ASSETS AND OWNERSHIP OF THE HOUSE.

CP at 164. We assume that the entry for Washington State Deferred

6

Compensation refers to an asset other than John's pension plan. At the time of the divorce, John Grant worked for the State of Washington and participated in the State's PERS pension plan. We lack any information as to the value of the PERS account at the time of the divorce. John Grant drafted all of the lists and divisions of property.

The litigation between the parties includes more than the dissolution action and this later partition suit. On May 31, 2013, Kathleen Grant moved in Clark County Superior Court for relief from the 2010 dissolution decree and alleged that she knew not of John's PERS pension at the time of dissolution. By agreement of the parties, the trial court dismissed the motion for relief from judgment.

Kathleen Grant did not relent. On January 6, January 15, and March 31, 2014, she, in Kittitas County Superior Court, again moved for relief from the 2010 decree of dissolution. We do not know the purpose of three motions, rather than one motion. In her motions, she argued that John Grant's failure to disclose his PERS plan constitutes an extraordinary circumstance that invalidated the divorce decree. The trial court denied the motions for relief.

On June 13, 2014, Kathleen Grant filed an amended motion for relief from the decree. Kathleen supported the June motion with attachments and a declaration that provided:

7

I was led to believe by a lack of financial disclosure in discussions with John that the 401(k)s and IRAs, personal investments, and savings was the sum total of all our assets. This was to be our entire savings and investments for retirement in conjunction with his social security. The State of Washington PERS Plan was not included in this envisioned retirement scenario. A review of the Distributions of Assets attached to the Decree of [Dissolution] and Findings of Fact make no mention of a retirement plan through the State of Washington.

CP at 156. John Grant filed a responsive declaration that listed the reasons why Kathleen knew of his PERS pension plan. On August 11, 2014, Kathleen filed a second amended motion for relief from judgment and responsive declaration. The trial court denied the motion and awarded John $6,762.72 in attorney fees.

## PROCEDURE

We now move to the lawsuit on appeal. On March 30, 2015, Kathleen Grant filed a complaint for partition of personal property on the ground that the 2010 trial court did not divide John Grant's PERS pension in the marriage dissolution decree. In response, John did not assert as affirmative defenses res judicata or collateral estoppel arising from earlier litigation. In his answer to the complaint, John raised the affirmative defense of waiver. He does not assert this defense on appeal.

John Grant filed a motion for summary judgment, which motion he supported with a declaration. Kathleen Grant responded with a supporting declaration. She declared facts undermining John's evidence of her knowledge of his state pension account. John's responsive declarations included a response to a request for admission sent him by

8

Kathleen, wherein John stated "that [he] provided to Kathleen Grant all records, statements and other written information necessary for her to determine and verify the extent of and accuracy of the values of all assets acquired during the marriage." CP at 275, 280.

The trial court granted John Grant summary dismissal of Kathleen Grant's suit for partition. The trial court also granted John's request for $10,120.00 in attorney fees and $38.15 in costs.

Kathleen Grant moved for reconsideration. She listed the material contested facts as:

> • That Kathleen Grant had knowledge of the contested asset;
> • That the family court had knowledge of the contested asset;
> • That the language in attachment "A" to the decree of dissolution awarding "the balance of the assets" was sufficient to put both Ms. Grant and the court on notice that the PERS account existed;
> • That Kathleen Grant and the court in the dissolution matter intended the language in attachment "A" to the decree of dissolution awarding "the balance of the assets" to the Defendant in this matter.

CP at 318-19. The trial court denied the motion for reconsideration.

## LAW AND ANALYSIS

On appeal, Kathleen Grant asserts two principal arguments. First, John Grant and she own the PERS retirement plan as tenants in common because the 2010 dissolution decree failed to mention and allot the plan to John. Kathleen's knowledge of the PERS plan is irrelevant to this first contention. Second, John breached his fiduciary duty by

9

hiding the existence of the PERS plan from her, and this concealment invalidates the decree's disbursement of property. We rule in favor of Kathleen on her first argument and thus do not address the second contention.

The 2010 marital dissolution decree did not list John Grant's PERS pension plan as an asset, and the decree awarded John "the balance of assets" not specifically awarded to Kathleen Grant. On appeal, Kathleen contends the divorce decree provision "the balance of the assets" failed to divest the community interest in John's pension because of the pension's significance and her lack and the trial court's lack of knowledge of the existence of the asset.

RCW 26.09.050 declares, in part:

> (1) In entering a decree of dissolution of marriage . . . , the court shall . . . make provision for the disposition of property and liabilities of the parties.

RCW 26.09.080 controls the court's division of property and debt:

> In a proceeding for dissolution of the marriage . . . , the court shall, without regard to misconduct, make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors including, but not limited to:
> (1) The nature and extent of the community property;
> (2) The nature and extent of the separate property;
> (3) The duration of the marriage or domestic partnership; and
> (4) The economic circumstances of each spouse or domestic partner at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse or domestic partner with whom the children reside the majority of the time.

10

RCW 26.09.070 permits the parties to enter into property settlement agreements. The statute reads:

> (1) The parties to a marriage . . . upon the filing of a petition for dissolution of their marriage . . . , may enter into a written separation contract providing for . . . the disposition of any property owned by both or either of them . . . .
>
> . . . .
> (3) If either or both of the parties to a separation contract shall at the time of the execution thereof, or at a subsequent time, petition the court for dissolution of their marriage . . . , the contract . . . shall be binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties on their own motion or on request of the court, that the separation contract was unfair at the time of its execution.

These three marital dissolution statutes promote a just, equitable, and fair allocation of property between the parties regardless of any agreement earlier reached. The statutes direct the dissolution court to ensure a fair distribution.

A dissolution court cannot decree a fair allocation of assets and debts without the court gaining thorough knowledge of the parties' property and liabilities. Thus, the Supreme Court has held that a settlement agreement or decree of dissolution must adequately identify the assets so as to permit the court to approve the agreement or make proper division. *Yeats v. Estate of Yeats*, 90 Wn.2d at 206 (1978). At a minimum, the documents must put the parties and the court on notice that the assets exist. *Yeats v. Estate of Yeats*, 90 Wn.2d at 206. On this basis, we hold that the 2010 divorce decree failed to distribute John Grant's interest in his PERS retirement plan and the parties hold

11

an equal share in the plan as of the date of the divorce.

Community property not disposed of in a dissolution is owned thereafter by the former spouses as tenants in common. *Yeats v. Estate of Yeats*, 90 Wn.2d at 203; *Chase v. Chase*, 74 Wn.2d 253, 258, 444 P.2d 145 (1968); *Northwestern Life Insurance Co. v. Perrigo*, 47 Wn.2d 291, 293, 287 P.2d 334 (1955). Likewise, a spouse's pension plan not disposed of in a divorce decree is owned by the former spouse as tenant in common. *In re Marriage of Buchanan*, 150 Wn. App. 730, 735-36, 207 P.3d 478 (2009); *Barros v. Barros*, 34 Wn. App. 266, 269, 660 P.2d 770 (1983). The reason for this rule is that the court did not exercise its jurisdiction over the property. *Sears v. Rusden*, 39 Wn.2d 412, 416, 235 P.2d 819 (1951). If the property rights of the parties are not brought before the court in some manner, such rights are not and cannot be affected by the decree. *Sears v. Rusden*, 39 Wn.2d at 416. The undistributed property becomes subject to partition or other appropriate declaratory relief. *Lambert v. Lambert*, 66 Wn.2d 503, 510, 403 P.2d 664 (1965); *Olsen v. Roberts*, 42 Wn.2d 862, 864, 259 P.2d 418 (1953).

*Yeats v. Estate of Yeats* informs our decision. Agnes and William Yeats divorced after twenty-four years of marriage. A property settlement agreement, approved by the dissolution court, read:

> "With respect to property both real and personal acquired by Husband and Wife during their marriage and owned by them or either of them at the time of their separation, the same has heretofore been equitably divided and apportioned between the parties as set forth in Exhibit "A" attached hereto and they hereby ratify and confirm such division.

12

. . .
Section 6 Support and Maintenance of Wife

. . .
Wife accepts the payments specified in and to be made under this Section . . . in lieu of any interest in and to any and all property which Husband now owns or may hereafter acquire . . .

. . .
II. INSURANCE:
The Husband shall maintain in effect for the benefit of the Wife life insurance on the life of the Husband in the amount of $10,000.00 naming the Wife as sole beneficiary thereof."

*Yeats v. Estate of Yeats*, 90 Wn.2d at 204. At the time of the execution of the agreement, nine life insurance policies insured the life of William in the face amount of $28,000 with a cash surrender value of approximately $1,000 and three policies insured Agnes with a face amount of $7,550 and a cash surrender value of $1,775. An additional $75,000 policy, for which William's employer paid, insured William's life. Five months after the dissolution, William married Jeanie. Six months later, William died. Jeanie brought suit to recover her community share in the policies insuring William.

The trial court and the Supreme Court granted Agnes Yeats her requested recovery. The Supreme Court wrote:

None of the policies is mentioned, much less fully described in the settlement agreement. The boilerplate language quoted above was not adequate to dispose of the policies. While one might assume that the parties intended that each receive the policies on his or her life, one cannot learn that from the terms of the agreement. It is pure speculation to determine what the parties intended or what the agreement meant. We hold that there must be sufficient specificity in settlement agreements or decrees of dissolution to identify the assets and their disposition. The requisite

specificity is not present here inasmuch as the policies were not even mentioned.

*Yeats v. Estate of Yeats*, 90 Wn.2d at 205. The high court also observed:

> It is impossible for the court to perform its statutorily mandated duties if it is unaware of the nature and extent of the property. Even a general description of the insurance policies would make known that such assets existed. This is necessary before the court or the parties can consider them in evaluating the dispositive scheme.

*Yeats v. Estate of Yeats*, 90 Wn.2d at 205.

John Grant principally relies on the language in his settlement agreement allocating the "balance of the assets" to him. We observe that the agreement in *Yeats* contained similar language in that Agnes disclaimed any interest in any and all property of William. This language did not suffice to distribute unlisted assets to William Yeats.

Other Washington decisions support our conclusion. In *Lambert v. Lambert*, 66 Wn.2d 503 (1965), the Supreme Court reversed the trial court's refusal to partition a minor stock account undistributed at the time of the divorce. Since the decree failed to mention the account, the wife retained a one-half interest in the account.

In *In re Marriage of Monaghan*, 78 Wn. App. 918, 899 P.2d 841 (1995), the dissolution decree divided the parties' community property equally, designated by two separate property schedules. The property schedule awarded to Robert Monaghan, among other items, his dental practice, subject to an interest in favor of Dolores Monaghan, in an amount computed as fifty percent of the gross funds received in excess

14

of $80,000.00, from the sale of the dental practice. The husband shortly thereafter sold his dental practice, but the sale did not include the practice's accounts receivable. The wife brought a partition action to recover one-half of the accounts accrued during the marriage. This court awarded her a community share in the accounts since the divorce decree failed to list the asset. We noted that, when property is held as tenants in common, our Supreme Court has held that the parties intended them to share the property equally, unless the court is shown otherwise.

The Washington high court's ruling in *Robinson v. Robinson*, 37 Wn.2d 511, 225 P.2d 411 (1950) may conflict with our holding. The dissolution decree awarded to the husband "all other property" and the wife renounced any interest in such property. The Supreme Court held that the decree granted the husband all assets, even assets about which the wife had no knowledge. We choose to follow the more recent and better reasoned *Yeats v. Estate of Yeats*, rather than *Robinson v. Robinson*. Washington public policy supports a full accounting before the dissolution court so that the court may equitably allocate assets.

John Grant insists that Kathleen Grant knew of his PERS retirement account, and he then attacks the fairness of her years later claiming an interest in the account. We observe that Kathleen mentioned "his retirement" during the first attempt to gain the dissolution court's signature on the 2010 decree. John may be correct that Kathleen knew of the account, but she denies such knowledge. Kathleen could have been confused

15

with John's deferred compensation program with the State or other retirement accounts when she referred to "his retirement." John was a certified public accountant. As an accountant, John should have known to thoroughly list assets on an asset sheet. Although Kathleen managed a pizza parlor, we do not know the extent of her financial acumen. With certain contracts, we require the parties place contractual terms in writing so that the parties do not later dispute the character of those terms. The law also encourages divorcing parties to fully disclose and consign all assets to writing to preclude future disputes.

We note that both John Grant and Kathleen Grant testify that the parties intended to split their assets in half. We question how the parties could evenly pare their property when the division fails to account for a major asset such as a retirement account. We do not know the value of the account at the time of dissolution, but presuppose a generous worth because John had worked for the State for twenty years. We also question how the dissolution court could determine the fairness of the division of property without John Grant listing his PERS plan on a sheet of assets shown to the court and attaching a value to the plan.

John Grant argues that this court's ruling will lead to a requirement that a divorcing couple list each fork, spoon, pen, and pencil on a list of assets presented to the trial court at the time of the divorce decree at the risk of a later legal squabble. We do not worry about this horrible. We doubt parties will incur the expense of a later partition

16

action to untine a fork or parcel a pencil. Also Our Supreme Court addressed this concern in *Yeats v. Estate of Yeats*. Settlement agreements and decrees of dissolution must include sufficient specificity to identify the assets and their disposition. *Yeats v. Estate of Yeats*, 90 Wn.2d at 205. Nevertheless, a property description suffices if it allows the court to perform its statutorily mandated duties while aware of the nature and extent of the property. A general description of an asset and lumping some common assets together may dispose of most personal property so long as doing so does not impinge on the court's equitable duties. *Yeats v. Estate of Yeats*, 90 Wn.2d at 205.

We conclude that, based on the undisputed facts, the 2010 dissolution decree failed to allocate the PERS retirement pension to John. Although Kathleen did not seek a summary judgment ruling in her favor before the trial court, when the facts are not in dispute, this court may grant summary judgment to the nonmoving party. *Impecoven v. Department of Revenue*, 120 Wn.2d 357, 365, 841 P.2d 752 (1992); *Leland v. Frogge*, 71 Wn.2d 197, 201, 427 P.2d 724 (1967); *Washington Association of Child Care Agencies v. Thompson*, 34 Wn. App. 225, 234, 660 P.2d 1124 (1983).

The trial court entered findings of fact challenged by Kathleen Grant on appeal. Because we may resolve this appeal without addressing the findings, we do not discuss them.

Tenants in common are presumed to own equal shares in the property unless they prove otherwise. We remand to the trial court for entry of an order declaring Kathleen

17

Grant to hold a one-half interest as a tenant in common in John Grant's PERS pension plan to the extent of the plan's value at the time of marital dissolution.

By motion filed after she filed her opening and reply briefs, Kathleen Grant seeks an award of reasonable attorney fees and costs on appeal pursuant to RCW 26.09.140. RAP 18.1(b) requires a party seeking an award of reasonable attorney fees to devote a section of her opening brief to the request. Kathleen failed to comply with this rule. Therefore, we deny her request for an award of reasonable attorney fees and costs.

## CONCLUSION

We vacate the trial court's order dismissing Kathleen Grant's partition action and grant of reasonable attorney fees and costs to John Grant. We remand to the trial court for entry of an order declaring Kathleen an equal tenant in common with John in John Grant's PERS pension plan to the extent of the plan's value at the time of marital dissolution.

Fearing, C.J.

WE CONCUR:

Siddoway, J.

Lawrence-Berrey, J.

18