## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of:<br><br>BRIAN BUTLER,<br><br>      Respondent,<br><br>  and<br><br>SAORI KATANI,<br><br>      Appellant. | No. 57861-1-II<br><br><br><br><br><br>UNPUBLISHED OPINION |

VELJACIC, J. — Saori Kitani appeals the superior court's order granting Brian Butler's motion to enforce their settlement agreement, their final divorce order, and the superior court's findings of fact and conclusions of law pertaining thereto. Kitani argues that the superior court lacked jurisdiction over the marriage. Specifically, she asserts that because the parties filed a joint petition for divorce in Japan, recorded it with the respective ward, and received a receipt of acknowledgement of the petition, they were no longer married such that the superior court no longer had jurisdiction to address the division of property in Washington for an already-dissolved marriage. She argues that the trial court erred when declining to exercise comity toward the Japanese acknowledgment of petition for divorce such that no further proceedings would be necessary in Washington. Kitani also argues that the terms of the settlement agreement regarding the division of property were not fair and equitable. Finally, Kitani moves to strike the declaration attached to Butler's response brief and requests sanctions under RAP 10.3(6).

We conclude the superior court had jurisdiction to address division of property. We also conclude that the superior court did not abuse its discretion when declining to exercise comity toward the Japanese acknowledgment of petition for divorce. However, we reverse and remand for a fair and equitable distribution of real and personal property.

We grant Kitani's motion to strike the declaration attached to the response brief but deny her request for sanctions. Finally, we reverse the superior court's award of attorney fees and costs to Butler and deny his request for attorney fees on appeal as he fails to meet the requirements of RAP 18.1.

FACTS

I.    BACKGROUND

In 2015, Butler and Kitani met while Butler was living and working in Japan. Two years later, Butler and Kitani moved to the United States and were married in Washington. In 2019, Kitani returned to Japan. Butler later requested she return to Washington; she did so for five months.

In January of 2020, Kitani learned she was pregnant with the couple's son. Following the news, the couple proceeded to purchase a home in Bonney Lake in March of that year. However, shortly after purchasing the home, Kitani returned to Japan. Butler remained in Washington. In September, Kitani gave birth in Japan.

II.    DISSOLUTION PROCEEDINGS

In May 2021, Butler and Kitani began participating in alternative dispute resolution (ADR) in Japan for the dissolution of their marriage.[1]

---

[1] This process, called "Kyogi Rikon," translates to "Divorce by Agreement" and is a means of administrative divorce in Japan. Clerk's Papers (CP) at 191.

Meanwhile, in June, Butler commenced dissolution proceedings in Pierce County, Washington. The first ADR session in Japan occurred in July. Butler and Kitani each retained Japanese counsel. Kitani was served process regarding the Washington dissolution proceeding on September 15. Both Butler and Kitani had Washington attorneys in addition to their counsel in Japan. Kitani's Washington attorney filed their notice of appearance on October 25.

Due to the ongoing ADR proceeding in Japan, Butler and Kitani submitted a "stipulation and agreed order" to stay the Washington proceedings, which the superior court signed. Clerk's Papers (CP) at 14.

On July 1, 2022, Butler and Kitani reached an agreement via ADR and executed the document entitled "Settlement Agreement." The agreement provided for parenting, child support, conveyance of the Bonney Lake property to Butler, spousal maintenance, and finalization of the dissolution in both Japan and Washington. The agreement read, in relevant part:

> 1 (1)　[Butler] and [Kitani] agree to divorce today.
> (2)　[Butler] and [Kitani] s*hall file divorce papers in Washington State of the United States, and divorce notification in Japan* immediately after the agreement is reached. . . . [Butler] and [Kitani] shall cooperate in good faith in the procedures and delivery of documents necessary for the divorce *in both countries*.
> . . . .
> (4)　[Butler] shall sell the Property *after the divorce is finalized in the United States and Japan*.
> (5)　If [Butler] or [Kitani] respectively fails to promptly complete the divorce proceedings in the United States, the failing party shall pay all costs, including attorney's fees, incurred by the other party as a result of such failure.
> 2 (1)　[Agreement that son would live with Kitani in Japan, and she shall have custody]
> . . . .
> 5 (1)　[Kitani] shall transfer [her] share of ownership interest in the property to [Butler]. [Kitani] shall agree and shall not object to [Butler] submitting on behalf of [Kitani] the documents necessary for the transfer proceedings of ownership to the Pierce County District Justice Bureau prepared by [Kitani] *as part*

> *of the divorce proceedings in Washington State of the United States under 1(2) above.*[2]
>
> . . . .
>
> (7)     [Butler] and [Kitani] mutually confirm that, except as provided in 1(5) above, neither party shall make any claim against the other party for all costs (including attorneys' fees) involved in the divorce proceedings in the United States.

CP 65-69 (emphasis added).

Consistent with the agreement, on July 3, Kitani submitted a joint "petition for divorce" with the respective ward in Japan.  In return, the ward provided Kitani with an "acknowledgement of receipt of petition for divorce" (receipt) and a "certificate of all records (certificate of family register)" (certificate), noting the family registries had been updated.

III.     MOTIONS FILED IN WASHINGTON AFTER SIGNING OF THE SETTLEMENT AGREEMENT

On August 31, 2022, the superior court stay expired.

The next day, Butler's Washington attorney moved for a default judgment against Kitani because Kitani had not filed a response to the dissolution proceedings in Washington.

Two weeks later, and three days before the motion for default was to be heard, Kitani filed her "response to the petition about a marriage," asserting the superior court lacked jurisdiction over the marriage and requesting it exercise comity toward the receipt of petition for divorce provided by the Japanese ward.

Butler responded that the settlement agreement provided that he and Kitani were still required to finalize the dissolution in Washington regardless of the acknowledgment of petition for divorce from the Japanese ward.

---

[2] While the agreement was written in Japanese, we use the English version as translated by the parties via a Washington State Court certified translator and provided in our record.

On September 19, the trial court denied Butler's motion for default judgment because Kitani filed a response to the petition about a marriage and a response opposing Butler's motion for default before the hearing.

On September 29, Butler filed a motion to enforce the settlement agreement. He argued that the agreement was not enforceable without a divorce order from the superior court. Butler supported his motion with a declaration. In it, he stated that the agreement clearly requires that he and Kitani must finalize the divorce in both Japan and Washington, and that he was unable to record the quitclaim deed to the Bonney Lake property and corresponding real estate excise tax affidavit due to "a representative of the recorder's office [telling] [him] that [he] need[ed] to show a divorce order entered" prior to recording a new deed changing ownership. CP at 325.

Kitani reasserted that the superior court lacked jurisdiction as she and Butler were already validly divorced in Japan, and she requested dismissal of the proceedings.

On October 21, the superior court granted Butler's motion to enforce the settlement agreement. A week later, a written order was entered to that effect. In its order, the court acknowledged the settlement agreement required the parties to finalize the divorce in Washington. Consequently, the superior court declined to exercise comity, noting that the "divorce paper submitted to the [ward] is not an order or a judgment." CP at 339. It then ordered the parties to submit final divorce orders by December 2, and granted Butler attorney fees and costs pursuant to sections 1(2) and (5), and section 5(7) of the settlement agreement.

After the superior court's ruling, Kitani filed a declaration from a Japanese attorney, Naoko Ishihara. In the declaration, Ishihara stated that pursuant to Japanese civil code, married couples can divorce upon mutual consent. Ishihara stated that the procedure is administrative in nature, with no court involvement. Consequently, divorce by agreement allows parties to register the

divorce with the ward, which in turn changes the status of the parties from married to divorced in the family registries. Ishihara explained that the updated status in the family registry certifies the "personal events occurring" and therefore, the mutual agreement is legally effective "upon the acceptance" of the divorce notification by the ward; this terminates the marriage. CP at 357. Therefore, Ishihara opined that Kitani and Butler were "legally divorced under Japanese law." CP at 357.

Additionally, Ishihara opined that the settlement agreement was duly entered as it was executed following Japanese arbitration. Consequently, Ishihara stated the agreement is valid under the general principles of contract law unless void due to several factors, none of which apply here.

Ishihara concluded that the terms of the settlement agreement provide that the parties would submit the notification in Japan, which Kitani did, effectively making the divorce legal under Japanese law. It is unclear whether the superior court considered this declaration given that it was filed after the superior court issued its order.

Butler responded to Ishihara's declaration with several arguments aimed at undercutting the credibility of the declaration. However, Butler conceded that in terms of the process that occurred in Japan, Ishihara is correct, and there is no dispute regarding how Kitani processed the divorce in Japan. Yet, Butler maintained that Ishihara did not address how the Washington dissolution proceeding is to be concluded.

On January 3, 2023, the superior court entered findings of fact and conclusions of law as well as a divorce decree. Kitani appeals.

6

ANALYSIS

I.      IN REM JURISDICTION

Kitani makes numerous arguments regarding what she calls the superior court's "in rem subject matter jurisdiction" over the marriage. Appellant's Br. at 23-24. Several of the arguments relate to the central theme that the superior court could not have jurisdiction because she and Butler were already divorced when she filed the joint petition and received the acknowledgement from the ward in Japan. The conclusion Kitani seeks is that the Japanese proceeding divested the Washington court of jurisdiction. However, Kitani admits that Washington has in rem jurisdiction over the parties' Bonney Lake property. We conclude that the Washington court has in rem jurisdiction and hold that the trial court did not err in so ruling.

We begin our analysis with a cursory overview of types of jurisdiction in light of the framing of some of Kitani's challenges on appeal and the parties' terminology in briefing.

At the outset, "[j]urisdiction 'is the power and authority of the court to act.'" *ZDI Gaming, Inc. v. Wash. State Gambling Comm'n*, 173 Wn.2d 608, 617, 268 P.3d 929 (2012) (internal quotation marks omitted) (quoting *Dougherty v. Dep't of Labor & Indus.*, 150 Wn.2d 310, 315, 76 P.3d 1183 (2003)).

Subject matter jurisdiction relates to the authority of the court to hear and decide the *type* of controversy at issue. *Banowsky v. Guy Backstrom, DC*, 193 Wn.2d 724, 731, 445 P.3d 543 (2019) (emphasis added). Therefore, if a court lacks subject matter jurisdiction, the court does not have authority to decide the claim at all or issue orders of any type granting relief. *Id*.

However, in rem jurisdiction deals with a court's authority *to exercise jurisdiction over property*, making it "'far more analogous to personal jurisdiction than to subject matter jurisdiction.'" *Pastor v. Real Prop. Commonly Described as 713 SW 353rd Place, Fed. Way, King*

*County*, 21 Wn. App. 2d 415, 425, 506 P.3d 658 (2022) (emphasis added) (internal quotation marks omitted) (quoting *City of Walla Walla v. $401,333.44*, 164 Wn. App. 236, 249, 262 P.3d 1239 (2011)). In rem jurisdiction exists "only in the state where the real property is located." *In re Marriage of Kowalewski*, 163 Wn.2d 542, 548, 182 P.3d 959 (2008). If the court has jurisdiction over the property of the marital estate, as when the property is located within Washington, the court may distribute that property. *Ghebremichale v. Dep't of Lab. & Indus.*, 92 Wn. App. 567, 574, 962 P.2d 829 (1998). Consequently, "a decree awarding real property located outside the state has no legally operative effect in changing legal title, except as provided by the law of the situs state" and a separate action must be brought to enforce a decree affecting real property located outside the state of Washington. *Kowalewski*, 163 Wn.2d at 548.

With regard to personal jurisdiction, challenges to it are waivable. *See Sheats v City of East Wenatchee*, 6 Wn. App. 2d 523, 537, 431 P.3d 489 (2018); CR 12(h).

We review questions of jurisdiction de novo. *See In re Marriage of McDermott*, 175 Wn. App. 467, 479, 307 P.3d 717 (2013) (reviewing subject matter jurisdiction de novo); *see also Failla v. FixtureOne Corp.*, 181 Wn.2d 642, 649, 336 P.3d 1112 (2014) (reviewing claim regarding personal jurisdiction de novo).

To be clear, "[a] proceeding dissolving marital bonds is a proceeding in rem. Where one party is domiciled in the state, the court has jurisdiction over the marriage and may dissolve it, even though the court is unable to obtain in personam jurisdiction over the nonresident spouse." *In re Marriage of Tsarbopoulos*, 125 Wn. App. 273, 284, 104 P.3d 692 (2004); RCW 26.09.030.

Here, as admitted by Kitani, the trial court had in rem jurisdiction because Butler resided in Washington and the marital property (the Bonney Lake house) and other personal property is in Washington; the trial court therefore had in rem jurisdiction to distribute the marital property.

And, significantly, both Butler and Kitani agreed to finalize the dissolution in Washington. Indeed, their settlement agreement clearly states that the parties "s*hall* file divorce papers in Washington State of the United States, *and* divorce notification in Japan immediately after the agreement is reached." CP at 65 (emphasis added). Both parties conceded in rem jurisdiction and agreed to submit to the superior court's jurisdiction in their settlement agreement. Kitani's argument to the contrary necessarily fails. And Kitani fails to establish that a challenge to in rem jurisdiction cannot be waived.

Next, Kitani argues that because she and Butler were already divorced at the time the superior court entered dissolution orders, there could be no evidence supporting the superior court's finding that she and Butler were married, a prerequisite to entry of a marriage dissolution. We disagree because we conclude that the parties agreed to Washington proceedings to resolve their dispute. To the extent Kitani agreed in the settlement agreement to dissolve the marriage in Washington as well and in Japan, she waived any challenge to Washington's in rem jurisdiction over marital property in Washington.

Kitani next argues that although Japan and Washington had simultaneous in rem jurisdiction, what she refers to as "co-ordinate *in rem* jurisdiction" over the marriage, Appellant's Br. at 29, the trial court was divested of its in rem jurisdiction when Kitani became domiciled in Japan, and when Japan exercised its in rem jurisdiction by dissolving the marriage and issuing the administrative acknowledgement.[3]

---

[3] Kitani also argues that application of the prior pending action doctrine supports the entry of the order staying the proceedings in Washington, which in turn supports the conclusion that the superior court lacked in rem subject matter jurisdiction. However, Kitani does not cite any authority that the prior pending action doctrine relates to foreign judgments or to the exercise of comity. Kitani's argument fails.

Kitani relies on *Tsarbopoulos*, 125 Wn. App. 273, for the proposition that Japan could validly dissolve the marriage despite Butler not residing in Japan, and that it did here. But *Tsarbopoulo*s does not have the effect Kitani desires because, though the parties dissolved their marriage in Japan, the Japanese dissolution did not divest Washington of jurisdiction. Significantly, as referenced above, Kitani conceded in rem jurisdiction exists in Washington. Moreover, both she and Butler agreed to submit to the jurisdiction of the court in Washington in their settlement agreement. And because courts may find a lack of jurisdiction only under compelling circumstances, under the specific facts of this case, the superior court did not abuse its discretion in ruling it had jurisdiction. *In re Marriage of Weiser*, 14 Wn. App. 2d 884, 905, 475 P.3d 237 (2020).

Kitani also relies on *Willapa Trading Co., Inc. v. Muscanto*, for the proposition that when there is no longer a res upon which the superior court can act, the court is deprived of in rem jurisdiction. 45 Wn. App. 779, 727 P.2d 687 (1986). But any reliance on this case is misplaced because *Willapa Trading* addressed admiralty in rem jurisdiction and concurrent in personam jurisdiction. 45 Wn. App. at 784. *Willipa Trading* is inapposite.

The specific facts of this case demonstrate that the superior court had in rem jurisdiction. In an apparent effort to resolve both the Japanese and Washington proceedings, the parties agreed to submit to the jurisdiction of a Washington court as part of the resolution of their dissolution, as expressed in sections 1(4) and (5) of their settlement agreement. Thus, the registration of the Japanese divorce and corresponding acknowledgment by the ward did not divest the superior court of in rem jurisdiction.

II.     COMITY

    A.     We Review A Decision Whether or Not to Exercise Comity For Abuse Of Discretion.

We review a superior court's decision whether or not to exercise comity for abuse of discretion. *Pruczinski v. Ashby*, 185 Wn.2d 492, 506, 374 P.3d 102 (2016). A trial court abuses its discretion when its order is manifestly unreasonable or based on untenable grounds. *Id.*

Kitani argues that the trial court abused its discretion when it did not exercise comity as to Japan's administrative acknowledgment of petition for divorce such that no further proceedings in Washington were necessary. Butler counters that the superior court has discretion on whether or not to exercise comity. We agree with Butler that a superior court has discretion on whether to exercise comity as to a foreign judgment and that on these facts the superior court did not abuse its discretion.

    B.     When Comity May Be Exercised

Comity is not a rule of law. *In re Estate of Toland*, 180 Wn.2d 836, 856, 329 P.3d 878 (2014) (Wiggins, J., concurring in part). Rather, we exercise comity out of deference and respect and for the purposes of practice, convenience, and expediency. *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 160-61, 744 P.2d 1032, 750 P.2d 254 (1988). It is not an imperative or obligation upon our courts but lies within their discretion. *Id.*; *New W. Fisheries, Inc. v. Dep't of Revenue*, 106 Wn. App. 370, 379, 22 P.3d 1274 (2001); *MacKenzie v. Barthol*, 142 Wn. App. 235, 240, 173 P.3d 980 (2007); *State v. Medlock*, 86 Wn. App. 89, 96, 935 P.2d 693 (1997). The underlying purpose of the comity doctrine is to respect a foreign state's application of its own laws and ensure there is an end to litigation.

As we have concluded above, the parties expressly agreed to submit to both Washington and Japanese jurisdiction in finalizing their dissolution. Accordingly, under the facts in this case, the superior court did not abuse its discretion in honoring the parties' settlement agreement by properly exercising in rem jurisdiction and declining to exercise comity as to Japan's administrative acknowledgment of petition for divorce such that further proceedings in Washington were unnecessary. The trial court did not err when it declined to exercise comity in a way that would deprive Washington courts of the ability to resolve how Washington property should be divided.

III.     ENFORCEMENT OF THE SETTLEMENT AGREEMENT

Kitani's briefing argues that the superior court erred in granting Butler's motion to enforce the settlement agreement and entering the final dissolution orders in Washington. However, at oral argument before us, Kitani clearly argued that she wants the settlement agreement enforced. Wash. Ct. of Appeals oral argument, *Butler v. Kitani,* No. 57861-1-II (Feb. 2, 2024), at 8 min., 14 sec. to 9 min., 4 sec.; 9 min., 39 sec., to 9 min., 49 sec., https://tvw.org/video/division-2-court-of-appeals-2024021037/?eventID=2024021037. Butler contends that the parties' settlement agreement itself required the parties to request the superior court recognize the validity of the agreement and enforce it via a divorce order. We accept Kitani's concession made at oral argument and hold that the trial court did not err in recognizing it had the authority to dissolve the marriage and determine matters attendant to a dissolution.

We review a trial court's order enforcing a settlement agreement de novo. *Fairway Collections, LLC v. Turner*, 29 Wn. App. 2d 204, 227, 540 P.3d 805 (2023); *see also Condon v. Condon*, 177 Wn.2d 150, 161 n.4, 298 P.3d 86 (2013) (explaining that de novo review is appropriate despite abuse of discretion having been the standard in the past). We interpret

settlement agreements in the same way we interpret other contracts. *McGuire v. Bates*, 169 Wn.2d 185, 188-89, 234 P.3d 205 (2010). In doing so, the goal is to determine the intent of the parties by focusing on their objective manifestations as expressed in the agreement. *See Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005).

When interpreting contracts, the subjective intent of the parties is generally irrelevant if the court can impute an intention corresponding to the reasonable meaning of the actual words used. *Id*. at 503-04. Words in a contract are generally given their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent. *Universal/Land Constr. Co. v. City of Spokane*, 49 Wn. App. 634, 637, 745 P.2d 53 (1987). We do not interpret what was intended to be written but what was written. *J.W. Seavey Hop Corp. of Portland v. Pollock*, 20 Wn.2d 337, 348-49, 147 P.2d 310 (1944).

Contracts are also considered as a whole, giving them a "'fair, reasonable, and sensible construction.'" *Kut Suen Lui v. Essex Ins. Co.*, 185 Wn.2d 703, 710, 375 P.3d 596 (2016) (internal quotation marks omitted) (quoting *Key Tronic Corp. v. Aetna (CIGNA) Fire Underwriters Ins. Co.*, 124 Wn.2d 618, 627, 881 P.2d 201 (1994)). "Where possible, [the court] harmonizes clauses that seem to conflict in order to give effect to all of the contract's provisions." *Id*.

Here, the record shows that Kitani and Butler executed the settlement agreement on July 1, after extensive negotiation while represented by counsel. Additionally, sections 1(2) and 1(4) of the agreement clearly note that "divorce papers" must be filed in both Washington and Japan to finalize the divorce and sale of the property:

> 1 (2)   [Butler] and [Kitani] *shall* file divorce papers in Washington State of the United States, *and* divorce notification in Japan immediately after the agreement is reached. . . . [Butler] and [Kitani] shall cooperate in good faith in the procedures and delivery of documents necessary for the divorce in *both* countries.
> . . . .

13

> (4) [Butler] shall sell the Property *after the divorce is finalized in the United States and Japan*.

CP at 65 (emphasis added). Further, section 5(1) of the agreement states:

> 5 (1) [Kitani] shall transfer [her] share of ownership interest in the property to [Butler]. [Kitani] shall agree and shall not object to [Butler] submitting on behalf of [Kitani] the documents necessary for the transfer proceedings of ownership to the Pierce County District Justice Bureau prepared by [Kitani] *as part of the divorce proceedings in Washington State of the United States under 1(2) above*.

CP at 69 (emphasis added).

Sections 1(2), 1(4), and 5(1) require filing of "divorce papers," along with "finaliz[ation]" of the divorce "in the United States and Japan," and require transfer of ownership of the property "as part of the dissolution proceeding in Washington State of the United States." CP at 65, 69. Read together, these provisions reasonably mean that the parties were to submit final documents to the superior court in Washington to finalize the dissolution. The superior court did not err in recognizing that, pursuant to the settlement agreement, it had the authority to dissolve the marriage and determine matters attendant to a dissolution.

IV.    SUPERIOR COURT'S PROPERTY DISTRIBUTION

Kitani, argues that the superior court's ruling that the property distribution was fair and equitable is unsupported by sufficient evidence because there was no evidence before the superior court of the entirety of the parties' property, its value, character (separate or community), or how distribution of the property would be made. As a result, property in Washington remains undistributed.[4]

---

[4] Kitani also argues that the other personal property *not* listed in the agreement, which she concedes is enforceable, is therefore owned by her and Butler as tenants in common. Consequently, she continues, the appropriate distribution of interests in this property would occur by partition. Wash. Ct. of Appeals oral argument, *Butler v. Kitani*, No. 57861-1-II (Feb. 2, 2024) at 9 min., 39 sec., to 9 min., 49 sec., https://tvw.org/video/division-2-court-of-appeals-2024021037/?eventID=2024021037. Because we reverse the property distribution and remand for

14

Under *In re Grant*, cited by Kitani, the court stated that where the parties enter into a property settlement agreement pursuant to RCW 26.09.070(3), said agreement is "binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties on their own motion or on request of the court, that the separation contract was unfair at the time of its execution." 199 Wn. App. 119, 129-30, 397 P.3d 912 (2017). "[M]arital dissolution statutes promote a just, equitable, and fair allocation of property between the parties regardless of any agreement earlier reached. The statutes direct the dissolution court to ensure a fair distribution." *Id*. at 130.

When making a just and equitable determination regarding the allocation of property, the superior court considers the agreement and other evidence. *See In re Marriage of Bernard*, 165 Wn.2d 895, 906, 204 P.3d 907 (2009) (considering not only the agreement but witness testimony, and a "side letter" regarding one of the parties' concerns with the agreement). Parties to a marriage dissolution may have a claim to a share of community assets. *See* RCW 26.09.080(1).

Parties are presumed competent to enter a contract. *Grannum v. Berard*, 70 Wn.2d 304, 307, 422 P.2d 812 (1967). This presumption can only be overcome by clear cogent and convincing evidence to the contrary. *See Id.* ("In Washington we have held that the standard of proof required to overcome this presumption, in civil cases, is that of clear, cogent and convincing evidence.").

Looking first at the agreement, the relevant sections relating to distribution of property are as follows:

> 5 (1)   [Kitani] shall transfer [her] share of ownership interest in the property to [Butler]. [Kitani] shall agree and shall not object to [Butler] submitting on behalf of [Kitani] the documents necessary for the transfer proceedings of ownership to the Pierce County District Justice Bureau prepared by [Kitani] *as part*

the superior court to hold a hearing to consider community and separate property held by the parties, we do not reach this issue.

15

*of the divorce proceedings in Washington State of the United States under 1(2) above*.

(2) [Butler] shall assume all obligations concerning the property. If [Kitani] is taxed in Japan or the United States concerning the property, [Butler] shall pay to [Kitani] an amount equal to such taxed amount as additional marital expenses.

(3) [Butler] shall store the items left behind by [Kitani] and the eldest son in the property with prudent care until delivery, and immediately after the conclusion of this agreement, send them to [Kitani] with careful attention to the packaging method to prevent damage and defacement per the instructions of [Kitani]. The cost of sending the items shall be paid by [Butler].

. . . .

(5) [Butler] shall pay to [Kitani], promptly after receipt of the documents mentioned in 1(3) above, 1,000,000 yen of expenses for childbirth of the eldest son and unsettled marriage expenses by way of a wire transfer to the bank account of [Kitani] listed in 3 above. [Butler] shall pay the transfer fee.

CP at 69 (emphasis added).

While Butler assumed the entirety of the debt and equity in the newly purchased home, as Kitani notes, the record contains no information on the amount of equity in the home, the value of the retirement account, or other community or separate assets, let alone any indication of what the superior court considered in coming to its determination that the distribution was fair and equitable. Accordingly, we must conclude the superior court's finding that the property distribution is fair and equitable is unsupported by substantial evidence. We reverse the superior court's entry of the decree and findings regarding the fair and equitable division of property and remand to the trial court to hold a hearing and enter findings and conclusions on that issue.

VI.     MOTION TO STRIKE

In her reply brief, Kitani moves to strike the declaration of Masami Kittaka attached to Butler's response brief. Relying on RAP 9.11, Kitani argues that we should strike the declaration because the declaration is not supplementing the record and instead seeks to provide additional evidence that was not before the trial court.

16

We generally refuse to consider new evidence. RAP 9.11. Under RAP 9.11 we "*may direct* that additional evidence on the merits of the case be taken before the decision of a case on review" if one of the rule's six factors are present. (Emphasis added.) Here, the declaration is not part of the superior court record, Butler did not file a motion to supplement the record, nor did we direct Butler to submit additional evidence on the merits of the case. Accordingly, the motion to strike is granted.

## VII. SANCTIONS

Kitani also requests sanctions against Butler, alleging neglect of appellate rules. Specifically, she argues that Butler failed to make arguments supported by proper citation as required by RAP 10.3(6) and misstated the record.

RAP 10.3(6) directs each party to supply in its brief, "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." Sanctions under RAP 10.7 may well be appropriate for counsel who neglect to meet the requirements of RAP 10.3. *Litho Color, Inc. v. Pac. Emps. Ins. Co.*, 98 Wn. App. 286, 305, 991 P.2d 638 (1999). The purpose of these rules is to enable the court and opposing counsel to efficiently and expeditiously review the accuracy of the factual statements made in the briefs and to efficiently and expeditiously review the relevant legal authority. *Id.* at 305-06.

Here, we do not find significant failures by Butler in complying with the Rules of Appellate Procedure. Accordingly, we deny Kitani's request for sanctions.

VIII.   ATTORNEY FEES

A.      Attorney Fees Awarded by the Superior Court

Kitani argues that the superior court erred when awarding attorney fees and costs to Butler pursuant to the settlement agreement.  In particular, she argues that the court made no findings that Kitani's actions delayed the proper completion of the underlying proceedings and without such a finding the court's conclusion entitling Butler to fees was unsupported.

Butler counters that the settlement agreement requires that either party pay attorney fees and costs incurred in delaying the Washington proceedings.  He further argues that under RCW 26.09.140, a court has discretion to order one party to pay reasonable attorney fees and costs.

Whether a party is entitled to attorney fees is a question of law that we review de novo. *Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc.*, 168 Wn. App. 86, 104-05, 285 P.3d 70 (2012).  "The general rule in Washington is that attorney fees will not be awarded for costs of litigation unless authorized by contract, statute, or recognized ground of equity." *Durland v. San Juan County*, 182 Wn.2d 55, 76, 340 P.3d 191 (2014).  If attorney fees are authorized, we will uphold an attorney fee award unless the court abused its discretion. *Workman v. Klinkenberg*, 6 Wn. App. 2d 291, 305, 430 P.3d 716 (2018).  "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).  We may affirm on any basis supported by the record. *Bavand v. OneWest Bank*, 196 Wn. App. 813, 825, 385 P.3d 233 (2016).

Here, because we reverse the superior court and remand for further proceedings, we also reverse the superior court's award of attorney fees and costs.

18

B.    Attorney Fees on Appeal

Butler also requests attorney fees on appeal.  A party must "include a separate section in [their] brief devoted to the request" for appellate attorney fees.  *Stiles v. Kearney*, 168 Wn. App. 250, 267, 277 P.3d 9 (2012); RAP 18.1(b).  This requirement is mandatory, and "requires more than a bald request for attorney fees on appeal."  *Stiles*, 168 Wn. App. at 267.  Because Butler fails to request attorney fees on appeal under a separate paragraph and with authority, and instead only devotes a single sentence; this fails the requirements of RAP 18.1.  Accordingly, we do not award attorney fees on appeal.

CONCLUSION

We conclude that the superior court had in rem subject matter jurisdiction over the marriage and that the superior court did not abuse its discretion when declining to exercise comity toward the Japanese acknowledgment of petition for divorce.  However, the superior court's finding that the property distribution is fair and equitable is unsupported by substantial evidence.  Therefore, we reverse the superior court's entry of the decree and findings regarding the fair and equitable division of property and remand to the superior court to conduct a hearing on the fair and equitable distribution of property.

Additionally, we grant Kitani's motion to strike Kittaka's declaration included in Butler's response brief and deny Kitani's request for sanctions for failure to meet RAP 10.3(6).  Finally, because we reverse and remand regarding the property distribution, we also reverse the superior court's award of attorney fees and costs.  Also, we deny Butler's request for attorney fees on appeal.

19

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Glasgow, J.

_____
Cruser, C.J.