**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| In the Matter of the Marriage of | No. 53695-1-II |
| MAURICE J. BRESNAHAN, III, | |
| Appellant, | |
| and | PUBLISHED OPINION |
| KATHLEEN M. BRESNAHAN, | |
| Respondent. | |

GLASGOW, A.C.J.—Kathleen M. and Maurice J. Bresnahan III[1] married in 1992 and separated in 2014. In 2015, the trial court entered a decree dissolving their marriage, and the parties divided their property by settlement agreement, which the trial court adopted. In 2017, the parties reached another agreement and entered a stipulation to distribute funds Maurice had failed to previously disclose.

In 2018, Kathleen moved to vacate the decree and the 2017 stipulation after discovering three additional accounts worth over $300,000 that were not disclosed during the parties' settlement negotiations. The trial court found that Maurice had misrepresented his assets and engaged in misconduct, and it ultimately vacated both the property distribution in the dissolution decree and the 2017 stipulation under CR 60(b)(4) and (11). The trial court awarded Kathleen attorney fees incurred in litigating this motion to vacate based on Maurice's intransigence.

Maurice appeals, arguing the trial court abused its discretion and applied an incorrect legal standard when it concluded that he had a duty of disclosure and failed to recognize that Kathleen

---

[1] Because the parties share a last name, we refer to them by their first names for clarity.

No. 53695-1-II

had a concomitant duty of due diligence. Spouses have a fiduciary duty to disclose the existence

of all their assets prior to dissolution. The scope of that duty is not determined by the other spouse's

diligence. We therefore hold the trial court did not abuse its discretion. We also hold the trial court

properly awarded Kathleen reasonable attorney fees.

We affirm and award Kathleen attorney fees on appeal.

FACTS[2]

I. SETTLEMENT NEGOTIATIONS AND PROPERTY DIVISION

During their 23-year marriage, Kathleen raised the couple's two children while Maurice

worked in public media. The parties moved multiple times for Maurice's job, including to Illinois

and South Carolina. After the parties separated, Maurice moved from Washington back to Illinois.

Kathleen later followed so that the children could be closer to Maurice.

During the dissolution settlement negotiations, Maurice e-mailed Kathleen information

about their financial assets. On September 3, 2014, he offered to "review with [her] all of [their]

accounts" and to send "a list with recent balances." Clerk's Papers (CP) at 311. On September 21,

2014, Maurice again said, "I'll send you a rundown of all our assets." CP at 314. He told Kathleen,

"We're not wealthy, but I hope there's more there than you expect." *Id.*

On October 4, 2014, Maurice said, "Attached is our financial info. Retirement accounts,

bank[] accounts, mutual funds, etc." CP at 316. The attached list referenced an "SC 401k" account,

presumably a retirement account from the parties' time in South Carolina. CP at 317. It did not

---

[2] Kathleen argues this court should disregard documents included in the clerk's papers that were filed after the trial court issued its decision on reconsideration. We need not consider these portions of the record to resolve this case.

No. 53695-1-II

reference any Illinois retirement accounts or other South Carolina retirement accounts. The same is true of lists that Maurice's counsel provided. An April 2015 e-mail from Maurice's counsel says Maurice "advise[d] that [Kathleen] was given a list of all assets." CP at 323.

Maurice proposed a settlement that excluded the "value of any Illinois retirement contributed by [Maurice] since his arrival there," presumably meaning any retirement contributed since Maurice returned to Illinois after the parties' separation. CP at 335. In an offer sent in August 2015, two weeks before the scheduled trial, Maurice again mentioned a South Carolina 401(k) account but did not mention any specific retirement account from Illinois, a second South Carolina retirement account, or a Heartland Funds account. Maurice's only reference to an Illinois account was a sentence indicating that Maurice "would receive the entirety of his retirement funds at his current employment in Illinois." *Id.*

The trial court entered findings of fact and conclusions of law listing the parties' community property and separate property. A tax deferred account from the "[South Carolina] Retirement System" worth approximately $116,000 was listed as community property. CP at 32. All of the corresponding documents suggested that this South Carolina account was a 401(k) account. Maurice's separate property was described as "[a]ny property acquired by him since the date of the parties' separation including any interest in State of Illinois SERS [State Employees' Retirement System] pension account and Busey Bank account in Illinois with a balance of approximately $3,800 as of the date of trial." *Id.*

In the division of property, Maurice was awarded the Busey Bank account, Illinois SERS pension account, and South Carolina Retirement System account, among other accounts. Kathleen was otherwise awarded 57 percent of the marital property. Maurice's counsel read the settlement

3

No. 53695-1-II

agreement into the record, and the parties ratified it. Kathleen indicated she believed it was a fair agreement. The trial court applied the parties' agreement when it distributed property in the dissolution decree.

II. 2016 MOTION TO VACATE AND 2017 STIPULATION

In January 2016, Kathleen received mail from Busey Bank addressed to Maurice Bresnahan. Because her son shares a name with Maurice, and Maurice no longer resided at that address, Kathleen assumed that the mail related to her son's account with Busey Bank and opened it. She saw that the December 2015 account balance was nearly $144,000 and soon realized that this statement was for her ex-husband's account. Because the balance of this account had increased by roughly $140,000 between when the parties reached a settlement agreement in August 2015 and when they signed the final papers in December 2015, Kathleen moved to vacate the dissolution decree.

Kathleen subpoenaed Busey Bank and learned that approximately $56,000 of this money had been in a cashier's check from an undisclosed bank account that Maurice had opened with TCF Bank. According to Kathleen, Maurice used the undisclosed TCF account "to deposit and accumulate community property" during the dissolution proceedings. CP at 238. He then closed out the TCF Bank account on August 10, 2015, approximately one week before the scheduled trial, with a cashier's check for the total balance of the account, and he held this cashier's check during the settlement negotiations. He then deposited the funds in the Busey Bank account, which he had opened on August 3, 2015. Kathleen said that Maurice described this error as "a miscommunication, misunderstanding, and/or oversight." CP at 57.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 53695-1-II

The trial court found there was sufficient evidence to warrant an evidentiary hearing to determine where the additional Busey Bank account funds came from and "whether Mr. Bresnahan misrepresented his assets." Suppl. Clerk's Papers (SCP) at 930. The trial court ordered an evidentiary hearing "to determine whether [Maurice] had unclean hands or if there was a legitimate explanation," but this hearing never occurred. CP at 411.

In 2017, the parties entered a stipulation whereby Maurice would pay Kathleen $48,000 "as full settlement for previously undisclosed funds that existed at the time of dissolution held in the TCF account and subsequently deposited into the Busey Account." CP at 44. Part of this settlement amount, $10,000, had been awarded to Kathleen in the dissolution decree but had not yet been transferred. The agreed amount was also intended to cover some of Kathleen's costs and attorney fees associated with her motion to vacate.

The 2017 stipulation included a provision stating, "In the event that any previously undisclosed or omitted assets are discovered, those funds shall also be divided 57% to [Kathleen] and 43% to [Maurice]," which was duplicated verbatim in the order. CP at 45, 47. Both parties acknowledged that the agreement was "not intended to address the transfer of retirement/investment accounts as set forth in the Decree of Dissolution." CP at 45. The trial court signed the agreed order attached to the stipulation. Kathleen entered the 2017 stipulation believing that any other failures to disclose were inadvertent.

### III. 2018 MOTION TO VACATE AND CURRENT PROCEEDINGS

A.    Discovery of Additional Previously Undisclosed Accounts

After moving to Illinois, Kathleen filed a petition for disabled adult support. As part of the discovery process for this petition, Kathleen received a statement for an Illinois State Universities

5

No. 53695-1-II

Retirement System account, or SURS account. A subpoena revealed that the SURS account in Maurice's name had been certified in 1992, during the parties' marriage, and that it was worth nearly $125,000 in 2015. Kathleen claimed she was not previously aware of this account because Maurice had never disclosed its existence.

The dissolution decree had awarded Maurice an Illinois SERS account, or State Employees' Retirement System account. After discovering the SURS account, Kathleen was unsure whether Maurice actually had a SERS account, or whether that designation in the dissolution decree was erroneous. When Kathleen asked Maurice about the discrepancy, he "claimed that the decree intended to award him the SURS account, but that it was 'misspelled due to a scrivener's error.'" CP at 58. During the dissolution negotiations, however, Maurice had represented that the only retirement account he had in Illinois was from a job that he began after the parties separated, and while the SURS account accrued during the marriage, the decree identified the SERS account as postseparation property. Additionally, "SERS and SURS are different retirement systems." *Id.*

Kathleen also learned that Maurice had a South Carolina 401(a) retirement account, in addition to the South Carolina 401(k), and an undisclosed Heartland Funds investment account. Both undisclosed accounts were established during the parties' marriage, making them community property. Kathleen's name was also on the Heartland Funds account, but she said the statements were mailed to Maurice's Illinois work address.

B.      2018 Motion to Vacate

In 2018, Kathleen again moved to vacate the dissolution decree, as well as the 2017 stipulation and agreed order, based on the three undisclosed accounts. She relied on CR 60(b)(3),

6

No. 53695-1-II

allowing the trial court to vacate based on newly discovered evidence, and CR 60(b)(4), based on fraud, misrepresentation, or misconduct. Kathleen argued Maurice "failed to disclose assets in bad faith" and noted that he had previously concealed assets and misrepresented the amount of money associated with the Busey Bank account. CP at 53. The Illinois SURS account was worth approximately $192,000; the second South Carolina retirement account was worth approximately $122,000; and the Heartland Funds account was worth $31,600.

Kathleen explained that Maurice controlled the couple's finances during the marriage and that she relied on him to honestly disclose the marital assets during the dissolution. She relied on Maurice's e-mailed list of the parties' assets, as well as a manila envelope from Maurice that he said contained their "complete financial records." CP at 56. She asserted that nothing Maurice provided her included the accounts in question.

Kathleen reported that although the agreement awarded *her* 57 percent of the parties' community property, when the undisclosed assets were included in the calculations, *Maurice* actually received 58 percent of the community property. She declared that "[i]n addition to the fraud involved in the property division," had she been fully informed of these assets, she would not have agreed to the maintenance award amount or the limited amount of relocation costs for her move to Illinois. CP at 59. She requested "100% of the hidden assets," additional spousal maintenance for life, and attorney fees. CP at 60.

C.      Maurice's Response

In his responsive declaration, Maurice stated, "I have never deliberately concealed assets." CP at 165. He insisted the Illinois and South Carolina retirement accounts were both awarded to him at the time of the dissolution by agreement. He characterized the reference to a SERS account

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 53695-1-II

in the dissolution decree as a scrivener's error. He insisted that the decree was "clear" that he was awarded the Illinois retirement account, that this was actually a SURS account, and that there was "no reference to post-separation accrual" at the settlement hearing. CP at 166. He further insisted that "'SURS' was clearly indicated on the paystubs and statements" his counsel provided to Kathleen. *Id.* Similarly, Maurice insisted the decree was "clear" that he was awarded "*the* South Carolina Retirement System account." *Id.* (emphasis added). In a subsequent declaration, Maurice reiterated, "There is no SERS account. Most critically, there has been no showing that any requests for financial information, account information, assets or otherwise were withheld from Kathleen during the pendency of our divorce." CP at 186-87.

Maurice also claimed statements for both accounts were sent to the family homes in South Carolina and Washington, where Kathleen also lived. He submitted 2012 and 2013 statements from his Illinois SURS account to the trial court that he claims were sent to the parties' shared address. He argued these statements were proof that Kathleen had notice of the SURS account, but the statements were clearly addressed to Maurice alone.

Maurice declared that Kathleen "managed the totality of the finances and helped to prepare [their] taxes each year." CP at 165. However, he attached e-mails where he informed Kathleen that when she filed her tax return, they could not both claim the same child as a dependent and she would need to report dividends from her mutual fund accounts. He wrote, "This would normally be none of my business, but I know this is new to you, and my concern is the [mutual fund] accounts seem to still [be] listed in both our names." CP at 181. In another declaration, Maurice stated that he "opened and managed all [the couple's] investments." SCP at 934.

No. 53695-1-II

As for the Heartland Funds account, Maurice said he had "no recollection of why the Heartland account was omitted" from the original dissolution settlement. CP at 165. However, both parties' names were on this account, and Maurice claimed he "assumed" the account belonged to Kathleen when he received statements from Heartland Funds in the mail in 2017. CP at 166. He also attached a 2017 notice from the IRS that listed taxes owed on an account with Heartland Value Fund Investor, among other accounts, which he had forwarded to Kathleen. He argued the contents of this account should be divided 57 percent to Kathleen and 43 percent to him, as contemplated by the parties' 2017 stipulation. He also requested attorney fees because he said Kathleen's motion to vacate was "brought in bad faith." CP at 168.

D.    Trial Court's Ruling

In its oral ruling, the trial court rejected Maurice's argument that references to a SERS account in the court's prior decree were actually references to a SURS account, finding this argument to be "a little disingenuous" where the account was listed as separate property. Verbatim Report of Proceedings (VRP) (Sept. 14, 2018) at 4. It found that the SURS account was "not the same account disclosed as a SERS account" and was "at least in part, community property." CP at 199. It found that all three of the accounts raised by Kathleen were newly discovered evidence under CR 60(b)(3). It further found that Maurice "made a misrepresentation under CR 60(b)(4) at least with regards to the Illinois SURS account . . . and possibly the other accounts." *Id.* The trial court reserved ruling on the issue of whether fraud occurred, explaining that this would require a determination of the parties' respective credibility at a trial.

Based on these findings, the trial court vacated the property division portions of the dissolution decree under CR 60(b)(3) and (4). Because the alleged amounts of the undisclosed

9

No. 53695-1-II

assets were "significant," the trial court declined to rely on the 2017 stipulation's provision to distribute them. VRP (Sept. 14, 2018) at 7. Instead it vacated the 2017 stipulation addressing the previously undisclosed Busey Bank account, explaining that if fraud were found at trial, Kathleen would be entitled to make a different argument regarding her entitlement to all of the property. It declined to address attorney fees at that time.

E.      Reconsideration

Maurice moved for reconsideration, arguing Kathleen's claims under CR 60(b)(3) were time barred and her claims under CR 60(b)(4) were not supported by substantial evidence. He continued to argue that Kathleen had failed to prove the Illinois and South Carolina retirement accounts were undisclosed.

Maurice again insisted that he "could not have made a misrepresentation regarding the SURS account" because it was listed on a document disclosed to Kathleen during settlement negotiations and that Kathleen was "clearly aware of the SURS account" because statements were sent to the shared home address. CP at 208-09. He also relied on numerous documents referencing a South Carolina 401(k) account to argue Kathleen was aware of that account. And he insisted more generally that Kathleen had "access to the parties' financials during their marriage," citing to one e-mail he sent her in 2009 asking, "What is our bank balance? I haven't seen any of our bills, balances, [or] statements in so long." CP at 210, 219.

Maurice argued Kathleen could not claim he misrepresented assets because she was represented by counsel, she "failed to exercise any diligence" or show "that she took some sort of steps to find this information," and he "was never under a legal duty to disclose any assets to [her]."

10

No. 53695-1-II

CP at 210, 212-13. He also claimed it was "clear that all of these accounts were disclosed." CP at 210.

### 1. Additional evidence about the accounts

Kathleen then contacted the South Carolina Public Employee Benefit Authority (PEBA) and asked for clarification on the relationship between an "SC State Retirement System Plan account" and an "SC Deferred Compensation Plan account." CP at 380. PEBA responded that these "are separate account[s] that are managed by different entities. The funds are not comingled. They are not considered the same account with different funds, but are completely separate accounts entirely." CP at 381. The South Carolina Retirement Systems account is a 401(a) account, and the South Carolina Deferred Compensation Program account is a 457 or 401(k) account. PEBA also sent a letter to Kathleen's counsel, confirming they are "separate retirement plans with separate member accounts." CP at 383.

A statement from Maurice's South Carolina Retirement Systems 401(a) account showed that it had earned credit through 2009, which was during the parties' marriage, and that it was worth over $116,000 as of 2018. This statement clarified that the account was inactive, that it included interest posted through June 2017, and that no additional interest would be credited to inactive accounts. In contrast, a statement from Maurice's South Carolina Deferred Compensation 401(k) account showed that, at the end of 2017, it was worth over $122,000. This account continued to accrue interest. The South Carolina Retirement Systems account that was distributed during the dissolution, which Maurice had represented as his 401(k), was actually the 401(a) account that had ceased to accrue interest. The separate 401(k) account was never disclosed or distributed.

11

No. 53695-1-II

2.      Trial court's ruling on reconsideration

In addressing Maurice's motion for reconsideration, the trial court entered a written decision and an order with additional findings of fact. It attached its specific findings relating to each undisclosed account as appendices.

The trial court found that there was no SERS account, the Illinois SURS account was "clearly not separate property" as Maurice had asserted, and the portion that existed prior to the parties' separation "should have been included in the valuation of the total marital estate as part of good faith settlement negotiations." CP at 551-52. Moreover, the trial court found Maurice's credibility was "affected by his argument that the account was previously awarded appropriately despite the mischaracterization of the asset and the clear misrepresentation of the asset[']s value." CP at 552. To allow Maurice to retain the entire SURS account, despite his representations that he was only retaining retirement earned since his return to Illinois, "would create a windfall to [Maurice] clearly not intended in the original Decree." *Id.* The trial court found that Maurice "should have realized" his Illinois retirement account was a SURS account and was community property. CP at 554. It concluded this was "a clear misrepresentation of this asset and potential misconduct." *Id.*

The trial court further found that, contrary to Maurice's earlier arguments, "there were, in fact, two South Carolina [r]etirement [a]ccounts, each identified by a different number[] and information. The accounts are separate, and their statements reflect separate balances." CP at 552. Only one account had been disclosed to Kathleen and to the trial court during settlement negotiations. The trial court concluded Maurice "should have known" he had a second account, disclosure of that second account would have "effectively doubled the amount [of South Carolina

12

No. 53695-1-II

retirement funds] considered by [Kathleen] during negotiations," and the failure to disclose it was "misrepresentation and potential misconduct." CP at 554.

Maurice had conceded that the Heartland Funds account was omitted from the settlement negotiation discussions.

Because Kathleen's CR 60 motion was brought more than one year after the decree was entered, the trial court reconsidered and rejected CR 60(b)(3), or newly discovered evidence, as a basis for the order to vacate. However, the trial court declined to alter its ruling granting the CR 60(b)(4) motion. The trial court specifically found that Kathleen presented clear and convincing evidence that Maurice committed misrepresentation or misconduct. It did not find that she had proved fraud by clear and convincing evidence but noted, "[I]t seems incomprehensible that [Maurice] did not realize that such sums were not disclosed." CP at 553. The trial court also reiterated its decision to vacate the 2017 stipulation, saying, "[I]f [Kathleen] can prove fraud at trial, she should be able to decide whether she wishes to exercise the option to request a more unequal division of the property or another remedy." CP at 556.

In its order, the trial court cited "credibility issues surrounding [Maurice]'s statements and arguments" and specifically recalled his "prior failed disclosure of the full value of the Busey account." CP at 555. It found "by clear and convincing evidence that [Maurice] misrepresented the parties['] community assets during the underlying dissolution and still failed to disclose all of the parties['] assets during the negotiations of the 2017 Stipulation and Order. This was also misconduct." *Id.* "The result of this failure to disclose was that [Kathleen] was prevented from being able to fully and fairly negotiate her case." *Id.*

13

No. 53695-1-II

The trial court found Maurice's misrepresentation to the court was "an additional reason to justify relief" under CR 60(b)(11) because "the court is obligated to consider those assets with all other factors in crafting or approving a fair and equitable division." CP at 553. Maurice's misrepresentations and failures to disclose prevented the court from properly discharging its statutory responsibilities. It further found that Maurice's "failure to include such a substantial amount of assets in the division of the parties['] property" also justified relief under CR 60(b)(11). CP at 555.

## IV. ATTORNEY FEES

In May 2020, Kathleen moved for over $100,000 in attorney fees that were incurred after entry of the dissolution decree on the basis that these fees were "all specifically related to [Maurice's] intentional concealment of community assets." Second Suppl. Clerk's Papers (SSCP) at 1054-55. She argued that if Maurice had been "honest and forthcoming with accurate and complete information about the nature and extent of the parties' assets, none of these fees would have been incurred." SSCP at 1059. She also asked for attorney fees and costs "for the litigation yet to come." SSCP at 1064.

The trial court found that the ongoing litigation "would not have been necessary but for [Maurice's] continued willful misrepresentation and/or mischaracterization of the community property." SSCP at 1273. It further found that Kathleen incurred additional attorney fees "because of [Maurice's] willful misrepresentation and/or mischaracterization of community property as found in the Order on Petitioner's Motion for Reconsideration." *Id.* It concluded Maurice's actions amounted to intransigence, and "this intransigence directly resulted in [Kathleen] incurring additional attorney fees and costs." SSCP at 1275.

14

No. 53695-1-II

The trial court awarded Kathleen approximately $62,000 in attorney fees and costs, finding this amount was "reasonable and appropriate given the nature of the litigation, the experience of [the attorney who litigated the 2018 motion to vacate] and his staff, and the time necessarily spent vacating the Decree of Dissolution and the February 2017 Stipulation and Order." SSCP at 1273. It reserved on all other requests and indicated that this court would evaluate attorney fees on appeal.

Maurice appeals the trial court's order vacating the property division in the dissolution decree and the 2017 stipulation, as well as the trial court's denial of his motion for reconsideration. Kathleen raises CR 60(b)(6), which applies in part when a prospective judgment is no longer equitable, as an alternative basis supporting the trial court's order to vacate. Maurice also challenges the trial court's award of attorney fees.

## ANALYSIS

### CR 60(b) MOTION

Maurice argues the trial court abused its discretion when it vacated the dissolution decree and 2017 stipulation because it "applied the incorrect legal standard and placed a duty on Maurice that was not his to bear." Br. of Appellant at 12. He contends Kathleen had notice that the undisclosed accounts existed but failed to exercise reasonable diligence, so under "the correct legal standard," she failed to show clear and convincing evidence that misconduct prevented her from fairly negotiating the settlement. *Id.* According to Maurice, it is "not enough to show only that certain assets were omitted." *Id.* at 16. We disagree.

As an initial matter, Kathleen argues we should not consider Maurice's argument that she failed to exercise due diligence because Maurice failed to raise it until his motion for

15

No. 53695-1-II

reconsideration. But Maurice's declaration in response to Kathleen's motion to vacate included argument that Kathleen failed to show "any requests for financial information, account information, assets or otherwise were withheld" from her. CP at 186. Implying that Kathleen should have requested more information about the assets is analogous to arguing that Kathleen failed to exercise due diligence. Therefore, we consider this argument on the merits.

A.      Duty of Disclosure and Maurice's Failure to Disclose

"Spouses owe each other 'the highest fiduciary duties.'" *In re Marriage of Lutz*, 74 Wn. App. 356, 369, 873 P.2d 566 (1994) (quoting *Peters v. Skalman*, 27 Wn. App. 247, 251, 617 P.2d 448 (1980)). "The full disclosure mandated by the fiduciary relationship assumes that one party has information which the other needs to know to protect [their] interests." *In re Marriage of Burkey*, 36 Wn. App. 487, 490, 675 P.2d 619 (1984). "This duty does not cease upon contemplation of dissolution." *In re Marriage of Sanchez*, 33 Wn. App. 215, 218, 654 P.2d 702 (1982). Rather, spouses have a specific fiduciary duty to disclose all community and separate property before dissolution. *Seals v. Seals*, 22 Wn. App. 652, 656, 590 P.2d 1301 (1979).

*Seals* is the seminal case addressing the spousal fiduciary duty to disclose property prior to dissolution. Doris Seals filed a partition action based on property that her former husband, Max Seals, had failed to disclose during the parties' dissolution. *Id.* at 654. Max was specifically asked in an interrogatory whether he owned any stock, and he falsely answered, "[N]o." *Id.* The trial court found that Max breached his fiduciary duty to Doris when he concealed his stocks and other community property, and the court awarded Doris half of the previously undisclosed property with interest. *Id.* On appeal, Max argued that "if [Doris] had used more diligence during discovery, . . . the property would have been disclosed." *Id.* He contended she should have used subpoenas, not

16

No. 53695-1-II

just interrogatories. *Id.* Division Three affirmed the trial court's division of the undisclosed property, holding that "[Doris] was not required to resort to subpoenas to discover these assets" and that "Max Seals had a fiduciary duty to disclose all community assets as well as separate property prior to dissolution." *Id.* at 655-56.

Spouses also have a duty to inform the court of their assets. In dissolution proceedings, trial courts must ensure that the parties' property is disposed of in a manner that "shall appear just and equitable" after considering, among other factors, the "nature and extent" of the parties' community and separate property. RCW 26.09.080(1), (2). "A dissolution court cannot decree a fair allocation of assets and debts without the court gaining thorough knowledge of the parties' property and liabilities." *In re Marriage of Grant*, 199 Wn. App. 119, 130, 397 P.3d 912 (2017). A settlement agreement "must adequately identify the assets so as to permit the court to approve the agreement or make proper division," and the documents submitted must at least "put the parties and the court on notice that the assets exist." *Id.* Full disclosure of assets to *both* the other spouse *and* the court is central to a fair division of property in a dissolution.

Here, Maurice seems to ignore the well-established fiduciary duty to disclose assets during dissolution proceedings. *See Grant*, 199 Wn. App. at 130; *Lutz*, 74 Wn. App. at 369; *Burkey*, 36 Wn. App. at 490; *Sanchez*, 33 Wn. App. at 218; *Seals*, 22 Wn. App. at 656. Maurice seeks to distinguish *Seals* from this case by focusing on the fact that "the wife in *Seals* made use of the discovery process" when she sent interrogatories, whereas "Kathleen never made use of the discovery tools available to her, despite having notice of the existence of the three assets at issue." Br. of Appellant at 28. But the key fact in *Seals* was that the husband deliberately concealed assets. Because Maurice had a fiduciary duty as Kathleen's spouse to fully disclose the couple's assets,

17

No. 53695-1-II

Kathleen's reliance on his disclosure was not meaningfully different from Doris Seals's reliance on her husband's interrogatory response. Importantly, requiring spouses to rely on formal discovery processes to reach reliable settlement agreements would make dissolution proceedings significantly more time consuming for the courts and unnecessarily costly for the parties involved.

Maurice also relies on *In re Marriage of Cohn*, 18 Wn. App. 502, 569 P.2d 79 (1977), to argue that Kathleen was not adequately diligent. But the moving spouse in *Cohn* was "apprised of the nature of Mr. Cohn's separate property sufficiently so as not to have been prejudiced by any lack of information in entering into [an] agreement. Further, there [was] no evidence of deliberate concealment by Mr. Cohn." 18 Wn. App. at 508. These facts are distinguishable from the present case, where there is evidence that Maurice deliberately and repeatedly concealed assets such that Kathleen was unaware of their existence.

Finally, Maurice relies on the principle that "'a party seeking relief from a judgment on the basis of fraud must have acted with due diligence.'" Br. of Appellant at 21 (bold face omitted) (quoting *Dalton v. State*, 130 Wn. App. 653, 664, 124 P.3d 305 (2005)). All of Maurice's arguments aim to treat property disclosures in dissolution cases like arm's-length transactions, but this view ignores his fiduciary duty to Kathleen. Moreover, Maurice's arguments that Kathleen should have been more diligent ignore his parallel duty to fully disclose *to the court*. The trial court applied the correct legal standard when it considered Maurice's fiduciary duty to disclose assets and declined to require due diligence or specific discovery from Kathleen.

B.      CR 60(b)(4) Motion to Vacate

A court may relieve a party from a final judgment based on fraud, misrepresentation, or misconduct. CR 60(b)(4). To prevail on a CR 60(b)(4) motion, the moving party "must establish

18

No. 53695-1-II

by clear and convincing evidence that the fraudulent conduct or misrepresentation caused the entry of the judgment such that the losing party was prevented from fully and fairly presenting its case or defense." *In re Vulnerable Adult Prot. Order for Winter*, 12 Wn. App. 2d 815, 830, 460 P.3d 667 (2020). Clear and convincing evidence is evidence showing that a fact is "highly probable." *Id.*

CR 60(b)(4) is intended to address judgments that were "'unfairly obtained,'" not just "'factually incorrect.'" *Id.* (quoting *Peoples State Bank v. Hickey*, 55 Wn. App. 367, 372, 777 P.2d 1056 (1989)). A trial court may vacate a judgment based on fraud and enter findings and conclusions establishing the nine elements of common law fraud. *Mitchell v. Wash. State Inst. of Pub. Policy*, 153 Wn. App. 803, 825, 225 P.3d 280 (2009). But it can also vacate based on misrepresentations or other misconduct without entering such findings. *Id.*

We review a trial court's decision on a CR 60(b) motion for abuse of discretion. *Winter*, 12 Wn. App. 2d at 829. A court abuses its discretion if it "'bases its ruling on an erroneous view of the law.'" *In re Marriage of Selley*, 189 Wn. App. 957, 959, 359 P.3d 891 (2015) (quoting *In re Parentage of A.L.*, 185 Wn. App. 225, 239, 340 P.3d 260 (2014)). A trial court also abuses its discretion if its decision is "outside the range of acceptable choices, given the facts and the applicable legal standard." *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

The trial court's factual findings are reviewed for substantial evidence, meaning evidence "'sufficient to persuade a rational fair-minded person the premise is true.'" *Winter*, 12 Wn. App. 2d at 830 (quoting *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003)). Unchallenged findings are verities on appeal. *In re Estate of Little*, 9 Wn. App. 2d 262,

No. 53695-1-II

274, 444 P.3d 23 (2019). We review conclusions of law de novo. *Id.* at 275. We do not assess credibility or weigh evidence. *Dalton*, 130 Wn. App. at 656.

The Washington Supreme Court has recognized that "trial court decisions in a dissolution action will seldom be changed upon appeal," and the spouse challenging the trial court's decision "bears the heavy burden of showing a manifest abuse of discretion on the part of the trial court." *In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985). Where the trial court undoes its own decision and awards a new trial, appellate courts give the trial court "even greater discretion." *State v. Hawkins*, 181 Wn.2d 170, 179, 332 P.3d 408 (2014). This is because "trial courts have a strong interest in preserving the finality of their judgments as well as preventing their dockets from becoming overcrowded with meritless retrials." *Id.* at 180.

1.     <u>Substantial evidence</u>

Maurice challenges some of the trial court's findings, but he fails to specifically discuss each challenged finding in his argument and, in any case, the trial court's findings are supported by substantial evidence. The trial court fully explained its reasons for vacating the property division in the dissolution decree and the 2017 stipulation. Before detailing Maurice's concealed assets, it recognized that Maurice and his counsel had both represented during settlement negotiations that they provided Kathleen information on "'all assets.'" CP at 410.

The trial court then found that the Illinois SURS account was "clearly not separate property," that Maurice should have realized the reference to the SERS account was erroneous, and that at least the preexisting portion of the SURS account "should have been included in the valuation of the total marital estate as part of good faith settlement negotiations." CP at 551-52. Maurice offered no real explanation for his misrepresentation that the Illinois account was separate

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 53695-1-II

property that only accrued after separation. There was substantial evidence to support the trial court's finding that this was "a clear misrepresentation of this asset and potential misconduct." CP at 554.

The trial court further found that, contrary to Maurice's earlier arguments, "there were, in fact, two South Carolina [r]etirement [a]ccounts, each identified by a different number[] and information. The accounts are separate, and their statements reflect separate balances." CP at 552. Only one account had been disclosed to Kathleen and to the trial court during settlement negotiations. All of the correspondence in the record references only the deferred compensation 401(k) account, not the separate 401(a) account. And the savings in the second account (the true 401(k) account) "effectively doubled" the total amount of retirement that Maurice had from South Carolina. CP at 554. There was substantial evidence to support the finding that exclusion of this account was a "misrepresentation and potential misconduct." *Id.*

Maurice does not dispute that the Heartland Funds account was never disclosed during negotiations.

The trial court questioned Maurice's credibility, and we do not review a trial court's evaluations of credibility on appeal. *Dalton*, 130 Wn. App. at 656. The trial court also considered Maurice's prior failure to disclose the full value of the Busey Bank account and his ongoing failure to disclose assets during the 2017 stipulation negotiations, which the trial court found to be additional misconduct. The trial court further noted that, given that the undisclosed assets amounted to over $300,000, "it seems incomprehensible that [Maurice] did not realize that such sums were not disclosed." CP at 553.

21

No. 53695-1-II

The trial court specifically found "by clear and convincing evidence that [Maurice] misrepresented the parties['] community assets during the underlying dissolution." CP at 555. It further found, "The result of this failure to disclose was that [Kathleen] was prevented from being able to fully and fairly negotiate her case." *Id.* The record shows that Kathleen met her burden to establish misrepresentations and misconduct by clear and convincing evidence, and the trial court's findings were supported by substantial evidence. Even absent overt fraud, Maurice plainly violated his obligation to disclose to both Kathleen and the trial court *all* assets prior to property distribution.

 2. <u>Appropriate remedy</u>

Maurice also contends that vacating the distribution of property in the dissolution decree and the 2017 stipulation was an inappropriate remedy under the circumstances of this case. Maurice first argues that the appropriate remedy is to distribute the undisclosed assets pursuant to the 2017 stipulation's provision requiring that all other undisclosed assets be distributed 57 percent to Kathleen and 43 percent to Maurice. But where misrepresentation or misconduct is involved, a trial court has discretion to vacate the decree. CR 60(b)(4); *Mitchell*, 153 Wn. App. at 825. As discussed above, the trial court's findings of misrepresentation and misconduct are supported by substantial evidence. Accordingly, vacating the property distribution was not an abuse of discretion.

Maurice also argues that the 2017 stipulation should not have been vacated because after he failed to fully disclose the funds associated with the Busey Bank account, Kathleen "was on notice that there may have been more undisclosed or omitted accounts. Yet she cannot show that she exercised reasonable diligence in seeking them out before signing the 2017 stipulation." Br. of

22

No. 53695-1-II

Appellant at 31-32. The argument that Kathleen should be deprived of a remedy because she had notice in 2017 that Maurice could be dishonestly hiding additional assets is absurd. Maurice had a fiduciary duty of disclosure and a duty to act in good faith. He breached those duties during the 2015 settlement negotiations, and he breached them again in 2017. His repeated breach of those duties properly subjected him to the trial court's exercise of discretion in crafting a remedy.

Maurice next argues that, rather than vacating the trial court's prior orders, the appropriate remedy is partition. He relies primarily on *Grant* to argue that a partition action is the only appropriate remedy under these circumstances. However, Division Three recognized that the moving spouse in *Grant* raised two arguments. 199 Wn. App. at 128. The first was that a previously undisclosed retirement plan was owned by the spouses as tenants in common and therefore should be divided between them; the second was that the nonmoving party had breached his fiduciary duty of disclosure, invalidating the entire property disbursement in the parties' dissolution decree. *Id.* Because the court ruled in favor of the moving spouse on the first argument, it did not address the second. *Id. Grant* never rejected the argument that a breach of fiduciary duty may be a basis for invalidating the property division in a dissolution decree.

We hold the trial court did not abuse its discretion under CR 60(b)(4) when it vacated the property division in the dissolution decree and the 2017 stipulation. Both were tainted by Maurice's failure to fully disclose the couple's assets.[3]

---

[3] Maurice also challenges the trial court's order under CR 60(b)(11), and Kathleen raises CR 60(b)(6) as an alternative basis to affirm the trial court. Because the trial court did not abuse its discretion in granting Kathleen's motion under CR 60(b)(4), we need not consider these alternative bases.

No. 53695-1-II

ATTORNEY FEES

Maurice challenges the trial court's award of attorney fees to Kathleen, arguing that even if this court affirms the orders to vacate the prior property distributions, the trial court's findings of misrepresentation are insufficient to establish intransigence. He claims intransigence "must be willful, not merely negligent," and the trial court did not find willful misrepresentation. Suppl. Br. of Appellant at 1. He also argues the trial court had to either segregate the fees caused by his intransigence or specifically find that intransigence permeated the proceedings. We disagree with all of Maurice's claims.

A.      Attorney Fees Awarded Below

Trial courts have discretion to award attorney fees "if the losing party's conduct constituted bad faith." *Seals*, 22 Wn. App. at 658. Intransigence includes "making the trial unduly difficult and costly by one's actions," *In re Marriage of Bobbitt*, 135 Wn. App. 8, 30, 144 P.3d 306 (2006), and causing the other party to "incur unnecessary and significant attorney fees," *In re Marriage of Burrill*, 113 Wn. App. 863, 873, 56 P.3d 993 (2002). Division One has upheld an award of attorney fees based on intransigence where one spouse breached his fiduciary duty in drafting contract language, misrepresented his income to the arbitrator, and failed to provide documentation of his income to the trial court, for example. *In re Marriage of Sievers*, 78 Wn. App. 287, 311, 897 P.2d 388 (1995).

This is an equitable remedy. *In re Marriage of Mattson*, 95 Wn. App. 592, 604, 976 P.2d 157 (1999). When intransigence causes the party seeking attorney fees "to require additional legal services," the parties' relative financial resources are irrelevant. *In re Marriage of Foley*, 84 Wn. App. 839, 846, 930 P.2d 929 (1997). The fee award should segregate the fees incurred because of

24

No. 53695-1-II

intransigence, *In re Marriage of Crosetto*, 82 Wn. App. 545, 565, 918 P.2d 954 (1996), unless the spouse's "bad acts permeated the entire proceeding," *Sievers*, 78 Wn. App. at 312. We review an award of attorney fees for abuse of discretion. *Crosetto*, 82 Wn. App. at 563.

Maurice incorrectly claims that intransigence requires a willful concealment of assets and that the trial court only found he negligently failed to disclose assets. None of the cases Maurice cites requires a specific finding of willfulness before a trial court may award attorney fees based on intransigence. Courts may award fees based on intransigence—without inquiring into the parties' mental states—where one party's actions caused the other party to incur significant additional legal fees that would have otherwise been unnecessary. *See, e.g.*, *Bobbitt*, 135 Wn. App. at 30; *Burrill*, 113 Wn. App. at 873; *Sievers*, 78 Wn. App. at 311. Regardless, the trial court here specifically found that Maurice's "continued *willful* misrepresentation and/or mischaracterization of the community property" necessitated additional litigation and that Kathleen incurred additional legal fees because of Maurice's intransigence. SSCP at 1273 (emphasis added). As discussed above, the record reflects that Maurice deceptively hid or mischaracterized assets, defeating his argument that his misrepresentations were merely negligent and did not rise to the level of intransigence.

Additionally, Maurice incorrectly claims that the trial court failed to segregate the fees incurred based on intransigence from fees incurred on other matters. The trial court did not award all of the fees that Kathleen incurred throughout all of the proceedings, nor did it award the $100,000 that she was requesting. It awarded approximately $62,000, which represented some of the fees that she incurred when working with the attorney who filed her 2018 motion to vacate, an amount that the trial court found was "reasonable and appropriate given . . . the time necessarily

No. 53695-1-II

spent vacating the Decree of Dissolution and the February 2017 Stipulation and Order." *Id.* Because Kathleen's 2018 motion to vacate was premised on Maurice's prior misrepresentations and failures to fully and accurately disclose assets, the trial court was permitted to find that all of the legal fees related to this motion were incurred as a result of Maurice's intransigence. No further segregation of fees was required. Accordingly, we affirm the trial court's award of attorney fees based on intransigence.

B.      Attorney Fees on Appeal

Kathleen also requests attorney fees on appeal based on Maurice's intransigence. A party may request reasonable attorney fees on appeal where applicable law grants them the right. RAP 18.1(a). Where an intransigent spouse's appeal "amounts to little more than an effort to carry on with the same efforts which caused [them] to lose credibility with the trial court," the appellate court may award attorney fees based on intransigence. *Sievers*, 78 Wn. App. at 312. Intransigence before the trial court may also support an award of attorney fees on appeal. *Mattson*, 95 Wn. App. at 606. Again, we need not consider the parties' relative financial resources when awarding attorney fees on this basis. *Foley*, 84 Wn. App. at 846. Because Maurice's appeal is a continuation of the intransigence he demonstrated below, we award reasonable attorney fees on appeal.[4]

---

[4] Kathleen alternatively requested attorney fees on appeal based on financial need under RCW 26.09.140. Consistent with RAP 18.1(c), each party filed an affidavit of financial need and an answer. Kathleen then filed a reply in support of her declaration of financial need, and Maurice filed a motion to strike this reply as not authorized by RAP 18.1. Although we do not award attorney fees based on financial need, we grant Maurice's motion to strike. Unlike RAP 18.1(e), which specifically provides for a party to file a reply in support of their affidavit of fees and expenses, RAP 18.1(c) does not provide for a party to file a reply in support of their affidavit of financial need.

No. 53695-1-II

CONCLUSION

We hold that the trial court did not abuse its discretion when it vacated the property division in the dissolution decree and the 2017 stipulation and order under CR 60(b)(4). We also hold that the trial court did not abuse its discretion when it awarded Kathleen attorney fees based on Maurice's intransigence. We affirm the trial court and award Kathleen reasonable attorney fees on appeal in an amount to be determined by a commissioner of this court.

Glasgow, A.C.J.

We concur:

Worswick, J.

Price, J.

27