# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of

JOHN FRANCIS LEHMANN,

Respondent,

v.

LILLIAN LEHMANN,

Appellant.

No. 83233-6-I

DIVISION ONE

UNPUBLISHED OPINION

BIRK, J. — Mother, Lillian Lehmann, and father, John Lehmann, share a son, J.L. The mother gave notice of an intended relocation, in response to which the father filed a petition to modify the parenting plan. The superior court held a two-day trial and entered a final order modifying the parenting plan. The mother did not disclose during trial that she and her husband had entered into a contract to purchase a different home and were in the process of closing during trial. The mother subsequently filed a second notice of an intended relocation to the new home. The father filed a CR 60(b) motion for relief from the final order due to misconduct by the mother at trial, which the trial court granted. The mother appeals. We conclude the trial court acted within its discretion and affirm.

I

The father and mother were previously married. On January 10, 2017, the parents entered into a final parenting plan by agreement.

On January 10, 2020, the mother provided a statutory relocation notice that she was seeking to relocate from Redmond to Bellevue, and stated in her notice that she planned to remarry and live with her new husband, who rented a home there. The move entailed a change of school for J.L. to Wilburton Elementary School, which is in the Bellevue School District. The notice stated that J.L. would begin at Wilburton in fall 2020. The new address stated in the notice was on NE 7th Place, Bellevue, Washington. This notice was signed under penalty of perjury, and included an affirmation that the mother would update her address if more information became available. The father did not object to this move, but on February 14, 2020 filed a petition to change the parenting plan. This petition requested minor changes to eliminate ambiguities and provisions that invited conflict, and requested modifications to account for the distance created by the mother's proposed relocation. The father requested adjustments to dispute resolution, decision-making, and transportation arrangements, among other things. On June 22, 2020, the father filed an amended petition titled, "Objection about Moving with Children and Petition about Changing a Parenting/Custody Order" that stated, "I do not object to the child[] moving with the relocating person, but I ask the court to approve my proposed parenting plan."

On February 8, 2021, the mother and her new husband entered into a contract to purchase a new home near Bridle Trails State Park in Bellevue (Bridle Trails home). While still in the Bellevue School District, the new address for the Bridle Trails home would require J.L. to attend a middle school and high school

2

different from the ones to which Wilburton Elementary students would matriculate. The mother did not inform the father or the court of this planned purchase.

A two-day trial was held on the father's petition on March 15 and 16, 2021. The mother's purchase of the Bridle Trails home closed on March 26, 2021. The mother did not disclose the pending purchase of the Bridle Trails home at any point during the trial, despite future moves and concerns about J.L.'s emotional and physical stability featuring prominently in the proceedings.

The trial court entered its final order and a modified parenting plan pursuant to the trial on April 16, 2021. The final order included detailed analysis of the transportation burdens on the father based on the originally disclosed Bellevue address and J.L.'s associated school. The order included the trial court's assessment relying on the mother's testimony that J.L. was "meeting kids in his neighborhood" and noting the mother "testified credibly" that "she does not intend to further relocate" and was "adamant she would not do so." The new parenting plan included a new condition on joint decision-making stating, "If the mother violates the decision-making protocol in any respect, decision-making shall be made solely by the father." The decision-making protocol listed "*[e]ducation* (such as where to attend . . . )" and *[r]outine, non-emergency health care decisions*" as "Major Decisions." (Boldface omitted.)

Following entry of the final order, in April and May 2021, the mother participated in selecting elective courses for J.L. at Chinook Middle School, the school he would have attended before the move to the Bridle Trails home.

On June 8, 2021, the mother gave notice of intent to relocate to the Bridle Trails home. On June 9, 2021, the mother, without input from or including the father, completed an address change form with the Bellevue School District, which caused J.L. to be enrolled in Odle Middle School, instead of Chinook Middle School, for the coming year. To support the change of address, the mother provided utility bills for April 2021 and May 2021.

In response to the June 8 notice of intent to relocate, the father filed a motion to vacate the final order under CR 60(b). The trial court held a hearing on the motion on August 31, 2021, and entered a written order on September 1, 2021, containing findings of fact and conclusions of law. The court vacated the final order and parenting plan entered on April 16, 2021, ordered a new trial, granted the father sole decision-making for major decisions regarding the child pending trial, and awarded attorney fees to the father. In its oral ruling, the court had stated, "I do think that there is more than enough here that qualifies for me to invoke the provision in the parenting plan that I shift the decision-making over to the father." This decision was based in part on the mother's failure to disclose that members of her household had tested positive for COVID-19 until after she transferred J.L. to the father's care, which the trial court stated was "obviously a medical decision that needed to be made jointly and transparently."

The mother appeals.

II

A decision to vacate a final judgment under CR 60(b) is reviewed for abuse of discretion. Barr v. MacGugan, 119 Wn. App. 43, 46, 78 P.3d 660 (2003). A court abuses its discretion when its decision is based on untenable grounds or reasoning. Id. " 'The trial court is in the best position to most effectively determine if . . . misconduct prejudiced a party's right to a fair trial.' " Andren v. Dake, 14 Wn. App. 2d 296, 305, 472 P.3d 1013 (2020) (concerning counsel's violation of rulings in limine) (internal quotation marks omitted) (quoting Spencer v. Badgley Mullins Turner PLLC, 6 Wn. App. 2d 762, 790, 432 P.3d 821 (2018)). When a trial court vacates its own decision and grants a new trial, an appellate court will give the trial court " 'even greater discretion' " on review because trial courts have a strong interest in preserving the finality of their judgments and preventing their dockets from becoming overcrowded with meritless retrials. In re Marriage of Bresnahan, 21 Wn. App. 2d 385, 407, 505 P.3d 1218 (2022) (quoting State v. Hawkins, 181 Wn.2d 170, 179, 332 P.3d 408 (2014)). In reviewing the trial court's exercise of discretion, this court does not weigh the evidence or assess the credibility of witnesses. Dalton v. State, 130 Wn. App. 653, 656, 124 P.3d 305 (2005).

CR 60(b)(4) authorizes a court to vacate a final judgment for fraud, misrepresentation, or other misconduct of the adverse party. To obtain a new trial under this rule, a party must show by clear and convincing evidence that the fraudulent conduct or misrepresentation of the other party prevented the losing party from fully and fairly presenting his case or defense. Bresnahan, 21 Wn. App.

2d at 406. The clear and convincing standard is satisfied by showing that the evidence of a fact is "highly probable." Id. at 406. CR 60(b)(4) addresses judgments that were " 'unfairly obtained,' " as opposed to " 'factually incorrect.' " Id. at 406 (quoting In re Vulnerable Adult Pet. for Winter, 12 Wn. App. 2d 815, 830, 460 P.3d 667 (2020)). The misconduct or misrepresentation need not be intentional, but may merely be careless. Hor v. City of Seattle, 18 Wn. App. 2d 900, 912, 493 P.3d 151 (2021), review denied, 198 Wn.2d 1038, 501 P.3d 142 (2022).

We conclude the trial court did not abuse its "even greater" discretion when it found that the mother had engaged in misconduct and vacated the final order under CR 60(b)(4).

A

The trial court concluded the mother's failure to disclose the Bridle Trails home prevented the father from fairly presenting his case. We agree. The mother contends the court erred when it granted the father's motion because she "did not deny the father's repeated claims that she will relocate again because she was living in a rental, and testified truthfully that she intended to remain in Bellevue, her failure to disclose that she was considering purchasing a home within Bellevue" therefore could not have substantially interfered with the father's ability to present his case. However, the court relied on CR 60(b)(4) in its order which "is based on the fairness of the process," not on the outcome. As the trial court stated in its order, "Under CR 60(b)(4), a trial court may vacate a judgment entered that was

6

procured by fraud, misrepresentation, or misconduct. 'The rule is aimed at judgments unfairly obtained, not factually incorrect judgments.' " (quoting Hor, 18 Wn. App. 2d at 912.) The trial court concluded that "[w]hile [the mother]'s testimony may have been true, it was also artful because there was an overarching concern about future moves. These concerns at trial should have crystal[l]ized the duty [to] disclose information about the Bridle Trail[s] home that had already attached by February 8, 2021." In response to the father's CR 60 motion, the mother filed a declaration testifying that she discussed the Bridle Trails home with her attorney, but her attorney advised the purchase was "not relevant to the trial." According to the mother's testimony, her attorney based this on characterizing the father's modification petition as being based on "my then move from Redmond in Lake Washington School District to Bellevue in Bellevue School District." As the trial court appreciated both in its final order and its order granting the CR 60 motion, the father's petition was not so narrowly drawn. In her declaration, the mother went on to state that the father was relying on her living in a rental home to "make allegations of instability against me." The mother offered this statement to defend the Bridle Trails move as bringing stability, but what is relevant for purposes of evaluating the CR 60 order is that, as this testimony implicitly acknowledges, the location, nature, and timing of the mother's living situation was being argued by the parties in the underlying modification petition.

The trial court found the father relied on outdated information when preparing for and arguing at trial, and the mother "allowed the entire trial to be

7

focused on at best incomplete, if not false information about where the child would live and what schools he would attend." "Because of [the mother's] concealment of the true address where she intended the child to live and the schools she intended the child to attend, [the father] did not have the correct information upon which to evaluate whether or not to object to the relocation."

The trial court's reasoning is supported by the record. At trial, the mother testified that she planned to integrate J.L. into a community in 5th grade so that he would have friends going into middle school, and high school, and the trial court was convinced she would not disrupt J.L. again. Given the fact the mother and her husband had entered into a contract for the Bridle Trails home over a month before she gave this testimony, it was misleading of her to represent that J.L.'s education and community would not be disrupted again. While she technically testified that she intended to "stay in the Bellevue School District until [J.L.]finishes his primary education in the school district," the implication of her testimony was that J.L. would continue in the same track with the same peers, not that he would be moved to a new middle school with different peers. The mother testified she had discussed the move with educators, and decided "if we were going to move . . . it is actually more beneficial to do it now when he is still in fifth grade elementary school so that he can actually go into middle school with the same Bellevue community he was already in. . . . So we are going to . . . let him build . . . in fifth grade and move him to Bellevue so that he has high school, middle school, you know, all stay within the same school district." The mother agreed when she was

specifically asked to clarify that J.L. was going to be in a new school the following year, only because he is moving into middle school. This supports the trial court's finding that the mother "allowed the entire trial to be focused on at best incomplete, if not false information about where the child would live and what schools he would attend." A considerable portion of the trial was devoted to testimony concerning J.L's educational and social stability.

The mother does not demonstrate the trial court abused its discretion by basing its decision on untenable grounds or reasoning under CR 60(b)(4). Under the even greater discretion standard of review, we do not disturb the trial court's finding that the mother's failure to disclose the Bridle Trails home during trial prevented the father from fairly presenting his case.

B

The trial court relied in part on the view that the mother had a duty to provide updated information regarding the Bridle Trails home. Under RCW 26.09.430, the parent with whom the child resides a majority of their time, here, the mother, is required to provide notice of an intended relocation. Under RCW 26.09.440(3), "[a] person required to give notice of an intended relocation of the child has a continuing duty to promptly update the information required with the notice as that new information becomes known." The mother contends that any duty to update information on an intended relocation under RCW 26.09.440(3) cannot extend past the time period that the party receiving notice has to timely object. As a result, the mother argues that by the time of the March 2021 trial, she had no duty under the

9

statute to update information in regard to her January 2020 notice, which to that point was the only notice she had given. We do not decide the time period during which the duty to update under RCW 26.09.440(3) persists, because we conclude the mother had an independent duty not to mislead the court through her testimony and arguments leading up to and during the March 2021 trial. We also do not reach, but leave to exploration on retrial, the question whether the mother's January 2020 notice was false when made, and if so, the appropriate remedy if any.

In family law proceedings, parties owe a duty of candor beyond that in "arm's-length" transactions to disclose information both to each other and to the court. See Bresnahan, 21 Wn. App. 2d at 405 (husband owed a fiduciary duty in a dissolution action to disclose all assets to both the wife and the court). The mother's contention that she had no duty to make any disclosure about the Bridle Trails home depends on her position that she did not form the intent to move to that home until June 8, 2021, and that at the time of the trial, the move was a "mere possibility." The trial court found that while there may have been contingencies related to the purchase of the Bridle Trails home, "these were specific, concrete scenarios known to [the mother]. . . . the information could have a bearing on the approaching trial and [the father's] positions, and she was obligated to pass on that information 'as [it became] known.'" The trial court was within its discretion to conclude the mother's testimony and arguments were misleading with respect to her plans to move and constituted misconduct under CR 60(b)(4).

The authorities the mother cites to support her argument that she had no duty to make disclosure about the Bridle Trails Home do not undermine the trial court's conclusion that a new trial is appropriate. The mother argues that once she moved J.L. to the first residence in Bellevue, it was an "accomplished relocation," and that under In re Marriage of McDevitt, the only statutory duty she had was to provide further notice under RCW 26.09.430 once her intent to relocate from the Bellevue rental to the Bridle Trails home became reality. 181 Wn. App. 765, 772-73, 326 P.3d 865 (2014). However, the facts in McDevitt are distinguishable.

In McDevitt, a mother filed a notice of intent to relocate the children from Hawaii to Colorado, where her new husband would be employed. Id. at 767. The father did not object to this move, and the mother and children relocated while trial was pending on the relocation. After trial, the court announced its decision and noted concern that the mother had not always been acting in good faith and ordered that the father's proposed parenting plan be adopted. Id. at 768. The mother attempted to withdraw her notice of intent to relocate to Colorado and said she intended to return with the children to Hawaii, arguing the court no longer had authority to modify the parenting plan because she had withdrawn the notice. Id. The trial court denied reconsideration and entered orders implementing the decision and setting forth the new parenting plan. Id. On appeal, this court held the trial court properly enforced its decision based on the mother's relocation to Colorado. Id. at 773. The mother had made two relocations since the dissolution of the marriage, and "[u]nder these circumstances, we think the trial court properly

could act upon the actual factual circumstances before it rather than on the anticipated future conduct of [the mother]." Id. at 772.

The father argues that because the mother here knew that the address she provided during the modification hearing was only temporary, it was not in fact an "accomplished" relocation like the one in McDevitt. In addition, the court in McDevitt pointed out that "allowing [the mother] to withdraw her request at that stage essentially gave her veto power over a decision she did not like. A parent, rather than the trial judge, then would be the one who decided what was in the current best interests of the children. Such an outcome is contrary to the legislative intent of the parenting plan statute." Id. at 772-73. McDevitt shows that the trial court is expected to have complete information regarding the parties' plans for the children at the time of the modification hearing in order for the court to effectively exercise its authority to determine what is in the best interests of the children. The mother in this case deprived the trial court of information that it needed in order to appreciate the reality of J.L.'s situation—that the mother planned another potentially disruptive move in the near future. The mother concealed that fact at the time of the modification trial.

The trial court was in the best position to assess the evidence of misconduct, and we do not reweigh the evidence or reassess the credibility of witnesses. Accordingly, under the even greater discretion standard of review, we do not disturb the trial court's conclusion that the mother relied on misleading

12

information about her plans that undermined the fairness of the modification trial and that this constituted misconduct.

III

The trial court did not err when it granted the father sole decision-making authority. A trial court's order modifying a parenting plan is reviewed for an abuse of discretion. In re Marriage of Kinnan, 131 Wn. App. 738, 746, 129 P.3d 807 (2006). An abuse of discretion occurs when a decision is manifestly unreasonable or based on untenable grounds or untenable reasons. In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012).

Under RCW 26.09.187(2)(b)(iii), a trial court shall order sole decision-making when it finds that "one parent is opposed to mutual decision making, and such opposition is reasonable" based on the criteria in (c). Those criteria are: (i) the existence of a limitation under RCW 26.09.191; (ii) the history of participation of each parent in decision making in each of the areas in RCW 26.09.184(5)(a); (iii) whether parents have a demonstrated ability and desire to cooperate with one another in decision making in each of the areas in RCW 26.09.184(5)(a); and (iv) the parents' geographic proximity to one another, to the extent that it affects their ability to make timely mutual decisions. While a trial court must consider all four criteria, the language of the statute does not suggest it is required to make a specific finding under each of the four criteria to order sole decision-making.

The mother argues the trial court erred when it granted the father sole decision-making authority, she says, to punish her and, in doing so, did not consider J.L.'s best interests. The mother's arguments are not persuasive.

The final order was never challenged, including its provision that the court would vest sole decision-making with the father if the mother violated the joint decision-making protocol. That order was based on a finding that the mother did not have a demonstrated ability and desire to cooperate. This was supported by evidence presented at trial that included the mother's decision to unilaterally enroll J.L. in private school after the parties had agreed to transition him to public school, which forced the father to file a motion for contempt and caused J.L.'s enrollment at his new school to be delayed. The mother also omitted the father's information from enrollment forms, which inhibited the father's ability to communicate with the school and access J.L.'s school records. The mother also unilaterally removed J.L. from childcare after the parties had gone through arbitration to select the child care provider.

The change to sole decision-making was not a punishment for any actions taken by the mother, but was the enforcement of an existing provision of the parenting plan. The trial court stated it would order sole decision-making if the mother violated the shared decision-making protocol. The mother violated that protocol by enrolling J.L. in a different middle school after announcing the relocation to the Bridle Trails home and by failing to disclose J.L.'s exposure to COVID-19. The court acted in accordance with its previous order. Accordingly,

14

we conclude the trial court did not abuse its discretion when it granted sole decision-making authority to the father.

IV

The trial court did not fail to act with the child's best interests in mind when ordering a new trial under CR 60(b)(4). The mother asserts that because extended litigation can be harmful to children, the trial court abused its discretion by granting a new trial. This argument is without merit.

The mother cites Schuster v. Schuster for the proposition that "children and their parents should not be subjected to repeated relitigation of the custody issues determined in the original action. Stability of the child's environment is of utmost concern." 90 Wn.2d 626, 628, 585 P.2d 130 (1978). The mother argues that by reopening the action the trial court put at risk the custodial continuity that the son has enjoyed since the parents' divorce and subjects J.L. to extended litigation over his relocation.

However, while finality of judgments is an important value of the legal system, "circumstances arise where finality must give way to the even more important value that justice be done between the parties." Suburban Janitorial Servs. v. Clarke Am., 72 Wn. App. 302, 313, 863 P.2d 1377 (1993). CR 60(b) is "the mechanism to guide the balancing between finality and fairness." Id. The mother contends that if the father's requests are granted at the new trial, it will not be in the child's best interest. That is not an issue before this court. The question before this court is whether the trial court acted appropriately when it granted a

15

new trial because it found that the first trial was undermined by the mother's misconduct. The appropriate balancing mechanism to determine whether a new trial is warranted is CR 60(b).

V

We reject the mother's assertion that this matter must be assigned to a different judge on remand. "Reassignment is appropriate to avoid the appearance of unfairness or bias." Shrauner v. Olsen, 16 Wn. App. 2d 384, 421, 483 P.3d 815 (2020).

The mother argues the trial court judge has signaled views on the disposition of the case, and speculates that "even if the trial court were to allow the son's relocation to the Bridle Trails house, it is likely that it will increase the father's residential time beyond what it already granted him at the conclusion of the earlier trial to avoid any 'future relocations' by the mother." The mother mischaracterizes the trial court's statements. The trial court interpreted the father's request for additional weekday residential time as a strategic move to prevent a future relocation, rather than in J.L.'s best interests, and therefore denied it. However, when the trial court learned that the mother had moved J.L. again after the hearing, it vacated the final order and ordered a new trial. It did not grant any additional time to the father. Nor does anything in the record support the suggestion that the trial court judge had prejudged any issue.

The mother fails to show any bias, unfairness, or prejudgment of this matter by the trial court judge. We decline to require remand to a new judge.

VI

We affirm the trial court's decision to award attorney fees to the father and award the father attorney fees on appeal.

This court applies a two-part standard of review to a trial court's decision to award attorney fees. Park Place Motors, Ltd. V. Elite Cornerstone Constr., LLC, 18 Wn. App. 2d 748, 753, 493 P.3d 136 (2021). First, the court reviews de novo whether there is a legal basis for awarding attorney fees by statute, under contract, or in equity. Id. Second, the court reviews a discretionary decision to award or deny attorney fees and the reasonableness of any attorney fee award for an abuse of discretion. Id. Here, the father cited a statutory basis for awarding attorney fees. RCW 26.09.550 provides that "[t]he court may sanction a party if it finds that a proposal to relocate the child or an objection to an intended relocation or proposed revised residential schedule was made . . . to unnecessarily delay or needlessly increase the cost of litigation." In addition, case law supports an award of fees when misconduct has been found under CR 60(b)(4). Andren, 14 Wn. App. 2d at 322 (awarding fees on appeal to "avoid incentivizing sanctioned parties from appealing in order to exhaust the benefit of any sanctions award granted by the trial court"). The trial court found that "[t]he costs of trial were substantially wasted because neither [the father] nor the Court had before [them] the true facts of where the child was proposed to live or where he was proposed to attend school." Based on the trial testimony and arguments of the mother at trial and the trial court's assessment of the failure to disclose the Bridle Trails home, the award of attorney

17

fees is supported by the record. The trial court did not abuse its discretion in deciding to award attorney fees to the father.

We further award fees to the father on appeal under <u>Andren</u> because fees were awarded based on the mother's misconduct at trial. In <u>Andren</u>, a trial had to be repeated because of a party's misconduct. <u>Id.</u> Here, the trial court ordered the mother "should be sanctioned $5,000 for allowing a trial to go forward on incomplete information. This sanction compensates [the father] for the unnecessary expenditure of some attorney's fees." The mother should compensate the father for all of the costs of successfully remedying the harm resulting from her misconduct at trial, including the cost of attorney fees incurred while defending the new trial order on appeal.

We affirm the order granting a new trial and remand for proceedings not inconsistent with this opinion.

_Birk, J._

WE CONCUR:

_Chung, J._        _Dwyer, J._